**Randall Joe HAYES and State of Texas Parks and Wildlife Department, Appellants,**

v.

**Keith PATRICK, Appellee.**

**No. 2–01–256–CV.**

Court of Appeals of Texas, Fort Worth.

March 7, 2002.

---

John Cornyn, Attorney General of Texas; Howard G. Baldwin, Jr., First Assistant Attorney General; Jeffrey S. Boyd, Deputy Attorney General for Litigation; Nelly R. Herrera, Chief, Tort Litigation Division; S. Ronald Keister and Cherie K. Batsel, Assistant Attorneys General, Tort Litigation Division, Austin, Texas, Attorney for Appellant.

Denbow, Wade, Bradford & Wade and Michael Wade, Fort Worth, Texas, Attorney for Appellee.

Panel B: DAY and LIVINGSTON, JJ.; and DAVID L. RICHARDS, J. (Sitting by Assignment.).

## OPINION

TERRIE LIVINGSTON, Justice.

### INTRODUCTION

Keith Patrick (Patrick) sued Game Warden Randall Joe Hayes (Hayes) and the State of Texas Parks and Wildlife Department (TPWD) for negligence. Hayes and TPWD (appellants) jointly moved for summary judgment asserting the affirmative defenses of official immunity and sovereign immunity. The trial court denied the motion, and we affirmed. *Hayes v. Patrick,*

45 S.W.3d 110, 118 (Tex App.-Fort Worth 2000, pet. denied) (op. on reh'g). Appellants then moved for summary judgment a second time, asserting that they had established the affirmative defenses of official and sovereign immunity, which was denied by the trial court. In one issue, appellants assert that the trial court erred in denying their motion for summary judgment. We reverse the trial court's order and render a take-nothing judgment in favor of appellants.

## BACKGROUND

### Facts

On the afternoon of June 29, 1997, Patrick was operating a jet ski on an unsanctioned, practice jet ski racing course on Lake Weatherford. During a practice run, a patrol boat operated by Hayes collided with Patrick's jet ski. The collision occurred when Hayes attempted to make an investigatory water traffic stop of Patrick.

The parties' accounts of the events leading to the accident differ significantly. Hayes stated that Patrick's jet ski first caught his attention when he saw it approach another jet ski operator, Tracy Sharp, near the shore. Hayes claimed that he observed Patrick perform a dangerous maneuver by accelerating at a high rate of speed on a collision course with Sharp. When Patrick was approximately fifteen feet from Sharp, he made a "power turn" hard to the right, dowsing Sharp with water, almost colliding with her in the process. This behavior, coupled with the fact that it occurred in an area of the lake where alcohol is often consumed and on a Sunday afternoon when boating while intoxicated occurrences were high, prompted Hayes to stop Patrick.

Patrick testified in his deposition that he and Sharp were planning to run the course together. Sharp's engine was not on, so Patrick circled the course and came back to her. Patrick stated that as he approached Sharp, he was angled away from her, traveling at approximately ten to fifteen miles per hour. A beach swimming area was roped off, and Sharp was just inside the rope in a corner by herself away from shore. Patrick was twenty to thirty feet from Sharp when he made a normal "45 degree" turn away from her to avoid the ropes. Patrick stated that he would have missed her even if he had continued traveling on his course. He also explained that as he turned, the jet ski sprayed water on Sharp, but he did not believe that he got her wet. Patrick stated that he was fifteen to twenty feet from Sharp when he passed her.

Hayes's and Patrick's account of their actions on the course differ significantly. Hayes says he cut his boat into the course in order to make a stop for the purpose of possibly issuing a citation. Hayes acknowledged that Patrick did not see him enter the course, but contends the risk in cutting into the busy course from the lake in an attempt to stop Patrick was justified in light of Patrick's dangerous behavior. Patrick and Hayes agree that there were only four or five other jet skiers on another part of the course at the time of the accident. Hayes maintains that as he entered the course, there were twenty-five to thirty yards between his patrol boat and any other water craft. Hayes claimed Patrick was cutting across the course as he positioned his patrol boat parallel to Patrick with approximately sixty feet of separation. He recalled that Patrick decelerated, then accelerated again, traveled a short distance forward, then turned sharply to the left, and accelerated quickly, colliding with the side of his boat.

Patrick could not recall specifically how the accident occurred, but stated that he maintained peripheral vision and looked

over his left shoulder during a turn around a buoy but never saw Hayes's boat. Patrick explained that the deceleration and then acceleration of his jet ski prior to the collision was the normal action in running the course: the operator decelerates while going into a turn around a buoy and then accelerates after making the turn. Patrick claims that Hayes's boat ran over him and that he saw the nose of the boat come between him and the handlebars of his jet ski. Hayes claims that Patrick's jet ski ran into the side of his patrol boat. As a result of the accident Patrick was injured and his jet ski was damaged.

## Procedural History

Patrick filed suit against Hayes alleging negligent operation of the motorboat and against TPWD under the Texas Tort Claims Act based on respondeat superior. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 1997). Appellants filed a joint motion for summary judgment based on official and sovereign immunity. The trial court denied appellants' motion, and appellants pursued an interlocutory appeal to this court under section 51.014(a)(5) of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(5) (Vernon Supp.2002).

In support of their first motion for summary judgment, appellants attached the expert affidavit of Chief Lake Ranger G.M. Cox. *Hayes,* 45 S.W.3d at 116. Ranger Cox had conducted an investigation of the accident and concluded that Hayes acted as a reasonably prudent game warden would have under the same or similar circumstances. *Id.* at 117. Although in our previous opinion we concluded that Hayes had made a prima facie showing of good faith, we stated:

> Based on the summary judgment record, we conclude that, although a reasonable officer might have determined that, *based on Hayes's version of the facts,* it was immediately necessary to stop Patrick on the course when all of the summary judgment evidence is viewed in the light most favorable to Patrick, there is evidence that, if believed, would allow a fact finder to determine that no reasonably competent person in Hayes's position could have thought that the facts justified the actions Hayes took in pursuing Patrick. [Emphasis added.]

*Id.* (citations omitted).

The only new summary judgment evidence presented by appellants in their second motion for summary judgment were additions to Ranger Cox's affidavit in which he set forth Patrick's version of the facts and based his opinions and conclusions on those facts.

## DISCUSSION

### Standard of Review

■ In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999); *Friendswood Dev. Co. v. McDade + Co.,* 926 S.W.2d 280, 282 (Tex.1996); *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most

favorable to the nonmovant. *Great Am.,* 391 S.W.2d at 47.

■ A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *KPMG Peat Marwick,* 988 S.W.2d at 748. To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law. *Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 121 (Tex.1996).

### Official Immunity

■ Official immunity is a common law affirmative defense that protects government officers and employees from liability for conduct that would otherwise be actionable. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653–54 (Tex.1994). To be entitled to official immunity, a defendant must show: (1) their conduct arose from the performance of a discretionary duty; (2) the duty was being performed in good faith; and (3) they were acting within the scope of their authority. *Id.* at 653. Patrick concedes that Hayes was performing a discretionary function and was acting in the scope of his authority. Thus, as in the previous appeal, the only dispute involves whether Hayes has established that he acted in good faith.

■ In *Chambers,* the supreme court recognized the competing interests that involve the good faith requirement: (1) the injustice of imposing liability on officers whose jobs require an exercise of discretion and that imposing such liability would deter officers' willingness to exercise that discretion for the public good; and (2) the rights of the public who are affected by officers' bad faith acts. *Id.* at 656. To accommodate these interests, the supreme court set forth a test to determine if an officer acts in good faith. This test is analo-gous to an abuse of discretion standard-an officer acts in bad faith only if the officer could not have reasonably reached the decision in question. *Id.* at 656–57 & n. 7. Accordingly, to established good faith, an officer must prove that a reasonably prudent officer, under the same or similar circumstances, *could have believed* that the need to immediately apprehend the suspect outweighed any clear risk of harm to the public. *Id.* at 656–57.

■ The "need" element of this balancing test refers to the urgency of the circumstances or the seriousness of the situation to which the officer responds, whether the officer's immediate presence is necessary to prevent injury or loss of life, and what alternative courses of action, if any, are available to achieve a comparable result. *University of Houston v. Clark,* 38 S.W.3d 578, 581 (Tex.2000) (quoting *Wadewitz v. Montgomery,* 951 S.W.2d 464, 467 (Tex.1997)). The "risk" element of good faith refers to the nature and severity of any harm that could result from the officer's actions, the likelihood that any harm would occur, and whether any risk of harm would be clear to a reasonably prudent officer. *Id.*

In this case, appellant offered Ranger Cox's amended affidavit in support of their second motion for summary judgment. The affidavit, in relevant part, stated:

> Even if Patrick's version of the facts are taken as true, it is my belief Mr. Patrick performed a dangerous maneuver when he directed his water craft toward Tracy Sharp's water craft and then made a turn near the swimming area. In my expert opinion such conduct could be perceived by a reasonably prudent game warden as, and constituted, operating a water craft in a reckless and dangerous manner, even if, as Mr. Patrick stated, he did not believe that he was danger-

ously near Ms. Sharp or that she was in fact splashed during his turn. This conduct threatened the safety, not only of Tracy Sharp, but of persons swimming in the roped off area along the shoreline. This is true even if Keith Patrick was not operating at an excessive speed and was maintaining a proper lookout for other water craft as he stated....

... Mr. Patrick's behavior in operating his jet ski, coupled with the suspicion of use of alcohol and the number of people in the area along the shore, support Hayes' decision to immediately stop Mr. Patrick.... Hayes could have believed, and a reasonably prudent game warden could have believed, that Patrick would again enter the shoreline operating in a [dangerous manner]. The area around the race course had fewer boaters and no swimmers and the spacing of the buoys was such that Hayes' patrol boat could safely maneuver through the middle of the course without creating a significant risk of danger to the four or five personal water craft operators going around the course. [The risk of harm in entering the course was less than the risk of allowing Patrick to continue,] particularly if it is taken as true that Mr. Patrick was maintaining a proper lookout for other water craft and looking over his shoulder during turns as he stated in his deposition.

■ We have noted previously that summary judgment in official immunity cases is improper when there are issues concerning the underlying facts. *Hale v. Pena*, 991 S.W.2d 942, 947 (Tex.App.-Fort Worth 1999, no pet.); *see Hayes*, 45 S.W.3d at 117. In *Hale*, we stated that "[t]he inconsistencies ... about the facts surrounding the accident necessarily create genuine issues of material fact." *Hale*, 991 S.W.2d at 947. Indeed, it would be futile to determine what an officer, "under

the same or similar circumstances, could have believed" when the parties dispute what those circumstances were or what it was that the officer actually perceived. Appellants, therefore, were correct in basing the need-risk assessment of Hayes's good faith on Patrick's version of the facts.

■ We believe that appellants' summary judgment evidence established that Hayes acted in good faith. Ranger Cox's affidavit discussed the seriousness of the situation, the need to immediately apprehend Patrick, and the availability of other alternatives. Although we note that Ranger Cox's affidavit does not use this specific language, "[s]ummary judgment requires that a movant establish facts upon which the court could base its legal conclusions, not that the parties use particular words." *Clark*, 38 S.W.3d at 585–86.

The affidavit addressed the seriousness of the situation. In Ranger Cox's opinion, the maneuver that Patrick performed prior to the pursuit was reckless and dangerous even based on Patrick's version of the facts. The affidavit states that Patrick's proximity to Sharp when he made the turn and the fact that it was in close proximity to a swimming area, even if only at ten to fifteen miles per hour, made the maneuver dangerous. Ranger Cox also noted that Hayes suspected alcohol use because this incident occurred at a time and place where intoxication was frequent—facts which were independent of Patrick's version of the events. The affidavit supports Hayes's decision to immediately stop Patrick because Patrick could have returned to the area close to shore. These facts address the need to immediately apprehend Patrick, the seriousness of the situation, and foreclosed the alternative of waiting until a later time to make the stop.

Patrick contends that Ranger Cox's affidavit does not address the risks of the pursuit. We disagree. Ranger Cox's affi-

davit describes the spacing of the buoys and the proximity of the four or five other jet skiers such that Hayes could enter the course without significant risk of collision with the other jet skiers. Based on these facts, Hayes could have recognized the nature and severity of the risk—collision with the others on the course—and concluded that the likelihood of that risk was low given their location and assuming that the other jet skiers were keeping a proper lookout.

Further, Ranger Cox's affidavit states the risk of harm was low "particularly if it is taken as true that Mr. Patrick was maintaining a proper lookout for other water craft and looking over his shoulder during turns as he stated in his deposition." This part of Ranger Cox's affidavit addresses the obviousness of the risk of collision with Patrick. As the supreme court stated in *Clark*, this particular risk factor keeps officers from being penalized for their "inability to perceive or evaluate a risk due to circumstances beyond [their] control, such as ... the inability to foresee a particular risk caused by a ... suspect or otherwise." *Clark*, 38 S.W.3d at 583. If Hayes assumed that Patrick was keeping a proper lookout and using his peripheral vision as Patrick stated in his deposition, the risk that Patrick would make an abrupt turn and collide with the patrol boat would not have been obvious to Hayes. Thus, Ranger Cox's affidavit considered the obviousness of the risk of a collision with Patrick. Based on Ranger Cox's affidavit, we conclude that Hayes established that he acted in good faith as a matter of law.

▪▪▪▪ To controvert an officer's summary judgment evidence on good faith, a plaintiff must meet an elevated standard and prove that "no reasonable person in the defendant's position could have thought the facts were such that they jus-

tified defendant's acts." *Chambers*, 883 S.W.2d at 657. There is no evidence of this in the record, especially in light of the fact that the consideration of the need-risk factors in Ranger Cox's affidavit is based on Patrick's version of the events leading up to the accident. Patrick, however, contends that the affidavit does not fully embrace his version of the facts. Specifically, he argues fact issues remain as to: (1) who hit whom; (2) Patrick's location when he entered the course; (3) where the accident occurred on the course; and (4) the layout of the course itself. Though these fact issues might be relevant to negligence, they are not relevant to the question of whether Hayes acted in good faith. Even if Patrick's version of these facts were taken as true, it does not impact any of the facts relied on by Ranger Cox in his affidavit in weighing the need and risk factors. Thus, we conclude Patrick did not successfully controvert Hayes's evidence that he acted in good faith.

## Sovereign Immunity

▪▪▪▪ TPWD asserts that if Hayes is entitled to an official immunity defense, then its sovereign immunity has not been waived. We agree. The supreme court has stated that "[i]t would serve no legislative purpose to declare a waiver of sovereign immunity when the basis of the liability is respondeat superior and the acts of the employee are covered by official immunity." *DeWitt v. Harris County*, 904 S.W.2d 650, 654 (Tex.1995). Patrick, however, asserts that section 101.055(2) is a basis for liability independent of section 101.021, and as a result, *DeWitt* does not apply. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.021, 101.055(2) (Vernon 1997). As in our previous opinion, because this argument was not presented to the trial court, it has been waived. TEX.R.APP. P. 33.1(a);

*Hayes,* 45 S.W.3d at 115 n. 3.[1] We conclude, therefore, that TPWD is entitled to a sovereign immunity defense as a matter of law.

Lastly, Patrick argues that because Hayes was an officer operating an emergency vehicle, he owes a duty of care to the public and whether Hayes breached that duty and proximately caused Patrick's damages are fact issues precluding summary judgment. But if Hayes is entitled to an official immunity defense as a matter of law, these fact issues concerning negligence are irrelevant. *See Chambers,* 883 S.W.2d at 655 ("The complex policy judgment reflected by the doctrine of official immunity, if it is to mean anything, protects officers from suit even if they acted negligently.").

We conclude that appellants have established that Hayes is entitled to the defense of official immunity as a matter of law. Accordingly, the sovereign immunity of TPWD has not been waived. Therefore, the trial court erred in denying appellants' motion for summary judgment. Appellants' sole issue is sustained.

## CONCLUSION

Having sustained appellants' sole issue, we reverse the order denying appellants' motion for summary judgment and render a take-nothing judgment in their favor.

---

1. Additionally, we note that section 101.055(2) is not a cause of action independent of section 101.021, but an exception to section 101.021's application under certain circumstances. *See City of El Paso v. Hernandez,* 16 S.W.3d 409, 415-16 (Tex.App.-El Paso 2000, pet. denied).