COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-04-023-CV

 

 

PATRICIA WHITE                                                                APPELLANT

                                                                                   AND
APPELLEE

 

                                                   V.

 

MARK TACKETT, IN HIS OFFICIAL                                            APPELLEE

CAPACITY AS STATE TROOPER                                     AND APPELLANT

FOR
THE TEXAS DEPARTMENT 

OF
PUBLIC SAFETY

 

 

                                              ------------

 

             FROM
THE 235TH DISTRICT COURT OF COOKE COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------








In this personal injury case,
Patricia White was injured when a suspect fleeing from police crashed his car
into hers.  White sued Mark Tackett, in
his official capacity as a state trooper for the Texas Department of Public
Safety, for recklessness in initiating and continuing the pursuit that led to
White=s injuries.  Tackett moved for
summary judgment on his affirmative defense of official immunity.  The trial court granted Tackett=s summary judgment motion, and this appeal followed.[1]


In two issues, White asserts
that summary judgment for Tackett is improper because Tackett=s summary judgment evidence does not establish his official immunity
defense as a matter of law and because White demonstrated the existence of a
material fact issue regarding whether Tackett acted in good faith.  In a single point on cross-appeal, Tackett
complains that the trial court improperly sustained White=s objections to some of his summary judgment evidence.  We affirm.








In a traditional summary
judgment case, the issue on appeal is whether the movant met his summary
judgment burden by establishing that no genuine issue of material fact exists
and that the movant is entitled to judgment as a matter of law.[2]  The burden of proof is on the movant, and all
doubts about the existence of a genuine issue of material fact are resolved
against the movant.[3]  Therefore, we must view the evidence and its
reasonable inferences in the light most favorable to the nonmovant.[4]

In deciding whether there is
a material fact issue precluding summary judgment, all conflicts in the
evidence are disregarded and the evidence favorable to the nonmovant is
accepted as true.[5]  Evidence that favors the movant's position
will not be considered unless it is uncontroverted.[6]  If the uncontroverted evidence is from an
interested witness, it does nothing more than raise a fact issue unless it is
clear, positive and direct, otherwise credible and free from contradictions and
inconsistencies, and could have been readily controverted.[7]








A defendant is entitled to
summary judgment on an affirmative defense such as official immunity if the
defendant conclusively proves all the elements of the affirmative defense.[8]  To accomplish this, the defendant-movant must
present summary judgment evidence that establishes each element of the affirmative
defense as a matter of law.[9]

Governmental employees are
entitled to official immunity from suit arising from the performance of
discretionary duties within the scope of their authority as long as they act in
good faith.[10]  A law enforcement officer acts in good faith
in a pursuit case if, based on the officer's perception of the facts at the
time of the event, a reasonably prudent officer in the same or similar
circumstances could have believed that the need to apprehend the suspect
immediately outweighed a clear risk of harm to the public in continuing, rather
than terminating, the pursuit.[11]  This good faith test is analogous to the
abuse of discretion standard we utilize when reviewing certain trial court
rulings.[12]








The Acould
have believed@
aspect of the good faith test means that in order to be entitled to summary
judgment, an officer must prove that a reasonably prudent officer might
have believed that the pursuit should have been continued. . . .  It does not mean that an officer has to prove
that it would have been unreasonable to stop the pursuit; nor must the officer
prove that all reasonably prudent officers would have continued the pursuit.[13]

 

An officer acts in bad faith only if the officer
could not have reasonably reached the decision in question.[14]








The Aneed@ aspect of
the good faith test refers to the urgency of the circumstances requiring police
intervention, including factors such as the seriousness of the crime to which
the officer is responding, whether the officer's immediate presence is
necessary to apprehend a suspect or to prevent injury or loss of life, and what
alternative courses of action, if any, are available to achieve a comparable
result.[15]  The Arisk@ aspect of
good faith, on the other hand, refers to the countervailing public safety
concerns:  the nature and severity of
harm that the officer's actions could cause (including the risk that both the
fleeing suspect and the officer could injure bystanders), the likelihood that
any harm would occur, and whether any risk of harm would be clear to a
reasonably prudent officer.[16]

A pursuit case requires a
continuing assessment of need and risk; however, the officer is not required to
affirmatively negate the existence of all circumstances or risks that did not
actually exist.[17]  Further, the balancing of need versus risk
does not prevent an officer from pursuing suspects for traffic violations or in
residential or other populated or high traffic areas.[18]

If an officer satisfies his
burden of establishing good faith, the plaintiff must put on controverting
evidence to avoid summary judgment.  ATo controvert the officer's summary judgment proof on good faith, the
plaintiff must do more than show that a reasonably prudent officer could have
decided to stop the pursuit; the plaintiff must show that >no reasonable person in the defendant's position could have thought
the facts were such that they justified defendant's acts.=@[19]








The summary judgment evidence
consists of: 1) the unstriken portion of Tackett=s affidavit, which was attached to Tackett=s motion[20]
and 2) a nine-page excerpt from Tackett=s deposition testimony attached to White=s summary judgment response, which Tackett referenced, in part, in his
reply to White=s response.[21]  This evidence shows the following:








At 5:41 p.m. on New Year=s Eve 2001, Tackett was on routine patrol duty for the Texas
Department of Public Safety when he clocked a new luxury sports car traveling
in excess of the 55-mile-per-hour posted speed limit.  The car was headed west on a rural
farm-to-market road, FM 902, approximately five miles from the City of Gainesville,
in what Tackett knew to be a high-crime area for theft and drug-related
offenses.  Tackett could not identify the
make or model of the vehicle and was unable to read its license plate, but he
saw two men inside who did not seem to Afit the vehicle.@  Tackett observed that the driver was a
Hispanic male in his 20s or early 30s who was wearing what appeared to Tackett
to be Awork@ clothesCa red sweatshirt with no logo on it. 
The passenger was a white male with long hair and a dirty
appearance.  Normally, the type of person
Tackett saw in that area in a brand new luxury sports car was an older person
whose dress was a Alittle more
fitting.@

Because of the vehicle=s speed, both occupants= appearance, and the fact that it was a high-crime area, Tackett
attempted to make a traffic stop by turning around to follow the car and
activating his patrol lights.  When the
driver did not stop, but sped up instead, Tackett turned on his siren.  The driver, who was later identified as
Guadalupe Max Limones, Jr., still did not stop or slow the car.  Instead, he again increased his speed and
began a series of maneuvers that were illegal and dangerous to himself, his
passenger, and others on the road, including driving on the wrong side of the
two-lane road, passing in a no-passing zone, and driving erratically and
recklessly.








Although the weather was
good, visibility was clear, the pavement was dry, and traffic was lighter than
usual, Tackett was unable to keep up with Limones along FM 902.  Unlike Limones, Tackett did not pass in
no-passing zones, and he slowed down for westbound vehicles in front of him,
waiting until they pulled over before he passed.  Because Tackett did not then know Limones=s identity, the make or model of the car, or the car=s license plate number, he had no information with which to trace
either Limones or the vehicle. 
Consequently, he radioed for assistance from other law enforcement
officers.

Two Cooke County sheriff=s deputies, Wesley Wood and Greg Taylor, responded to the
request.  They formed a partial roadblock
by positioning their patrol cars, with lights flashing, at the intersection of
FM 902 and FM 372Ca
T-intersection located approximately a mile from the Gainesville city limits
and several miles west of the original encounter between Tackett and Limones.

When he reached the
T-intersection, Limones did not stop. 
Instead, he sped past Wood=s and Taylor=s vehicles
and proceeded north along FM 372 towards Gainesville.  Wood took over the pursuit with Taylor and
Tackett, respectively, at various distances behind him.  Tackett lost sight of Limones=s car as it proceeded towards Gainesville.  Therefore, shortly after he turned onto FM
372, Tackett made another radio call requesting assistance from the Gainesville
Police Department so that Limones could be stopped on FM 372 before he reached
the intersection of California and Grand Avenues, one of Gainesville=s busiest intersections. 
Traffic was still fairly light and he was keeping watch for pedestrians
and other vehicles.








Limones=s car collided with a vehicle being driven by White on Broadway
Street.[22]  The crash occurred approximately two minutes
after Limones entered Gainesville.  Due
to his patrol car=s distance
behind Limones and the other pursuing patrol units, Tackett did not witness the
collision but arrived at the scene about thirty seconds after it had
occurred.  He saw White lying on the
ground and not moving, and he called for an ambulance.  He then began to pursue Limones and the
passenger who, according to an eye-witness, had fled on foot. 

This evidence establishes
Tackett=s good faith as a matter of law. 
It shows that Tackett assessed the initial need for the pursuit by
considering Limones=s speed, his
dangerous, unlawful attempts to evade detention for a traffic stop, both men=s appearances when contrasted with the luxury car they were in, and
the fact that they were speeding in an area known for theft and drug-related
offenses.  Tackett also considered the
lack of alternative courses of action; he could not identify either the car or
its driver, so apprehending the suspect later was not an option.








The evidence further shows
that Tackett assessed the risks of the pursuit. 
He noted that he was on a rural road, the weather was good and
visibility was clear, the pavement was dry, and traffic was lighter than usual.  He activated both his lights and his siren,
thereby making himself more visible to other drivers.  In addition, in attempting to catch Limones,
Tackett observed no-passing zones and slowed to allow vehicles in front on him
to pull over before passing them.  When
he realized that he could not keep up with Limones, Tackett radioed for
assistance.

The evidence further shows
that Tackett continued to assess both the need for and the risks of the pursuit
as it approached Gainesville.  Tackett
observed that Limones, who was still unidentified, did not stop for Wood=s and Taylor=s partial
roadblock at the T-intersection of FM 902 and FM 372, thereby adding to the
seriousness of his actions.  Once Wood
took over the pursuit and the chase proceeded towards Gainesville, Tackett did
not attempt to keep up with Limones or even keep sight of the car.  Instead, although traffic was still fairly
light, Tackett radioed for assistance from Gainesville=s police department so that they could stop Limones before he reached
one of Gainesville=s busiest
intersections and created Aa mess.@  Meanwhile, Tackett kept watch for pedestrians
and other vehicles.








We hold that the evidence
regarding Tackett=s ongoing
balancing of both the need for and the risks associated with the pursuit
conclusively establishes that a reasonably prudent officer in Tackett=s circumstances could have believed that the need to apprehend the
suspect immediately outweighed a clear risk of harm to the public in
continuing, rather than terminating, the pursuit.[23]  Therefore, the burden shifted to White to put
on controverting evidence showing that Ano reasonable person in [Tackett=s] position could have thought the facts were such that they justified@ his actions.[24]

White has not met this
burden.  She contends that the
Gainesville Police Department=s policy and Inter-Jurisdictional Pursuit Agreement, which limit the
total number of vehicles participating in a pursuit to three, are evidence that
a reasonable police officer would not have believed that the pursuit should
have been continued.  There is, however,
no evidence that the policies in effect on New Year=s Eve 2001 contained the limitation on which White relies.  Although Gainesville=s policies in the summary judgment record became effective in May
2001, they were revised after the accidentCin August 2002, May 2003, and June 2003.  Therefore, it is impossible for us to
determine what the policies consisted of on December 31, 2001.[25]  Further, there is no evidence that White, who
was a State Trooper and not a member of the Gainesville Police Department, had
notice of the policies= contents.








White also asserts that
Tackett=s Awritten
statement@ and his
deposition testimony suggest that Limones=s race Amay have@ factored into Tackett=s decision to engage in the pursuit. 
She contends that, if Tackett was motivated by racism, he could not have
acted in good faith.  White testified at
his deposition, however, that he decided to make the initial traffic stop based
on three factors:  the vehicle=s speed, the appearance of both of the vehicle=s occupants, and the fact that the car was speeding in an area known
for theft and drug-related offenses. 
Further, Tackett testified that the things about Limones=s appearance that did not Afit@ the luxury
sports car he was driving were his relatively young age and his attire, not his
race.  Moreover, Tackett observed that
Limones=s companion, a white male, also did not Afit@ the vehicle
due to his long hair and dirty appearance. 


In light of this evidence,
the mere fact that Tackett also observed that Limones was Hispanic is insufficient
to raise a fact issue concerning whether racism was the real motivation behind
Tackett=s decision to engage in the pursuit.[26]  To the contrary, White=s argument concerning racism is, on this record, nothing more than
mere surmise or speculation, which is not evidence.[27]








For all the foregoing
reasons, we hold that Tackett conclusively established his good faith and that
White did not controvert this evidence by presenting evidence showing that no
reasonable person in Tackett=s position could have thought the facts were such that they justified
Tackett=s actions.[28]  Accordingly, the trial court properly granted
Tackett summary judgment on White=s claims. 








The dissent misunderstands
our holding and confuses summary judgment burdens of proof with the rules
governing what evidence may be considered in determining whether a movant has
met his burden of proof.  We do not hold
that Tackett is entitled to summary judgment without conclusively establishing
every element of his affirmative defense, nor have we shifted to White the
burden of proving Tackett=s
affirmative defense by relying on the excerpts from Tackett=s deposition testimony that White attached to her response in
determining that Tackett=s defense is
conclusively established by the summary judgment evidence.  Instead, we simply recognize that, under
settled principles of Texas summary judgment law, the trial court was required
to consider all of the summary judgment evidence presented by the parties in
ruling on the merits of Tackett=s motion, including the nine-page excerpt from Tackett=s deposition that White filed with her response.[29]  The fact that Tackett specifically referenced
only one page of the deposition excerpt in his reply to White=s response does not, as the dissent contends, preclude us from
considering the testimony contained in the other eight pages of the excerpt in
determining whether Tackett=s affirmative defense was conclusively established by the summary
judgment evidence.  Neither party=s burden of proof is changed by our determination that this
uncontested summary judgment evidence supports Tackett=s motion.

We overrule White=s two issues and affirm the trial court=s judgment.[30]

 

JOHN CAYCE

CHIEF JUSTICE

 

PANEL
A:   CAYCE, C.J.; HOLMAN and WALKER, JJ.

 

WALKER,
J. filed a dissenting opinion.

DELIVERED:
August 25, 2005











 
 
 
 
 
 
 




 

 

 

 

 

 

                                      COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-04-023-CV

 

PATRICIA WHITE                                                                APPELLANT

                                                                                   AND
APPELLEE

 

                                                   V.

 

MARK TACKETT, IN HIS OFFICIAL                                            APPELLEE

CAPACITY AS STATE TROOPER                                     AND APPELLANT

FOR
THE TEXAS DEPARTMENT 

OF
PUBLIC SAFETY

 

                                              ------------

 

             FROM
THE 235TH DISTRICT COURT OF COOKE COUNTY

 

                                              ------------

 

                                   DISSENTING
OPINION

 

                                              ------------

Because the majority
misapplies the traditional summary judgment burdens of proof and standards of
review, I respectfully dissent.








The standards for reviewing a
motion for summary judgment are well established.  The movant has the burden of showing that
there is no genuine material fact issue and that it is entitled to judgment as
a matter of law.  Tex. R. Civ. P. 166a(c); Calvillo v. Gonzalez, 922
S.W.2d 928, 929 (Tex. 1996); City of Houston v. Clear Creek Basin Auth.,
589 S.W.2d 671, 678 (Tex. 1979).  When a
defendant moves for summary judgment based on an affirmative defense, the
defendant bears the burden of proving each essential element of that
defense.  Ryland Group, Inc. v. Hood,
924 S.W.2d 120, 121 (Tex. 1996).  If the
movant=s motion and summary judgment proof facially establish the movant's
right to judgment as a matter of law, then the burden shifts to the nonmovant
to raise a fact issue precluding summary judgment or to show that the movant=s legal position is unsound.  City
of Houston, 589 S.W.2d at 678; St. Paul Ins. Co. v. Mefford, 994
S.W.2d 715, 718 (Tex. App.CDallas 1999, pet. denied) (op. on reh'g).








In her first issue, White
contends that Tackett failed to meet the first summary judgment prong; that is,
he failed to prove every elementCspecifically the good faith elementCof his affirmative defense of official immunity to establish his right
to judgment as a matter of law.  The
summary judgment evidence produced by Tackett consists only of his own
affidavit and a copy of a settlement agreement. 
The settlement agreement is not relevant to Tackett=s affirmative defense.  White
objected to various portions of Tackett=s affidavit, and the trial court entered a five-page order sustaining
all of White=s
objections.  A total of approximately
five pages of Tackett=s nine-page
affidavit were ordered stricken.  The
remaining portions of Tackett=s affidavit fail, as a matter of law, to establish the good faith
element of Tackett=s alleged
official immunity defense.  See City
of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex. 1994) (recognizing good
faith is element of official immunity defense that governmental employee must
prove).[31]  Consequently, the burden never shifted to
White to come forward with any controverting summary judgment evidence.  See, e.g., Casso v. Brand, 776 S.W.2d
551, 556 (Tex. 1989); City of Houston, 589 S.W.2d at 678.  Because Tackett=s summary judgment evidenceCthe unstricken portions of his affidavitCfailed to conclusively establish the essential good faith element of
his affirmative official immunity defense, the trial court erred by granting
summary judgment for Tackett on his affirmative defense.








The majority does not dispute
that Tackett=s summary
judgment evidence alone (the unstricken portions of his affidavit) is
insufficient to conclusively establish the good faith element of his
affirmative defense.  The majority
instead holds that controverting summary judgment evidence attached to White=s responseCspecifically
excerpts from Tackett=s depositionCsatisfied Tackett=s initial burden of conclusively establishing every element of his
affirmative defense.  The majority
attempts to justify its reliance on White=s controverting summary judgment evidence by indicating that Tackett=s reply cites White=s evidence, specifically Tackett=s deposition testimony.  Tackett=s reply, however, contains a citation to only one pageCpage 45Cof his
deposition and that evidence was not on file twenty-one days before the
hearing.  See Tex. R. Civ. P. 166a(d).  The majority=s analysis nonetheless utilizes all of Tackett=s deposition excerpts attached as controverting summary judgment
evidence to White=s response,
not just page 45 referenced by Tackett in his reply.[32]

The Texas Supreme Court has
explained that while the majority=s approach may be appropriate in federal summary judgment practice, it
is not in Texas traditional summary judgment practice:

Under
[Fed.R.Civ.P.] 56c, summary judgment is proper Aif
the pleadings, depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no genuine issue as to
any material fact and that the moving party is entitled to a judgment as a
matter of law.@

 








Casso, 776
S.W.2d at 556 (quoting Celotex. Corp. v. Carett, 477 U.S. 317, 322, 106
S.Ct. 2548, 2552 (1986)).  The supreme
court has explained that traditional Texas summary judgment practice, unlike
federal summary judgment practice, involves a distinct, two-step process:[33]

Texas
law, of course, is different.  While the
language of our rule is similar [to the federal rule], our interpretation of
that language is not.  We use summary
judgments merely Ato
eliminate patently unmeritorious claims and untenable defenses, and we never
shift the burden of proof to the non-movant unless and until the movant has Aestablish[ed]
his entitled to a summary judgment on the issues expressly presented to the
trial court by conclusively proving all essential elements of his cause of
action or defense as a matter of law.@

 

Casso, 776
S.W.2d at 556 (citing City of Houston, 589 S.W.2d 671, 678 n.5)
(emphasis added).








Nor can I agree with the
majority that Rule 166a(c) or the holding Wilson v. Burford authorize
the trial court to grant summary judgment to a defendant moving for a
traditional summary judgment on the basis of an affirmative defense when the
defendant movant=s summary
judgment evidence fails to conclusively establish every element of the
defense.  Tex. R. Civ. P. 166a(c); Wilson v. Burford, 904 S.W.2d
628, 629 (Tex. 1995).  The Texas Supreme
Court in Casso rejected this interpretation of Rule 166a(c)=s language, making it clear that the burden of proof never shifts to
the nonmovant unless the movant conclusively establishes all essential elements
of his cause of action or affirmative defenseCwhich Tackett undisputedly did not do, even considering page 45 of his
deposition.  Casso, 776 S.W.2d at
556.  And in Wilson, the supreme
court explained that when a movant attaches a deposition
transcript to a brief filed in support of the movant=s motion for summary judgment,
the trial court may consider the deposition transcript as part of the movant=s summary judgment
evidence.  Wilson, 904 S.W.2d at
628-29.  The Wilson court did not
alter the fundamental principle that a movant must conclusively establish all
essential elements of his cause of action or defense as a matter of law before
the burden shifts and the trial court looks to the nonmovant=s summary judgment evidence.  See,
e.g., Ryland Group, Inc., 924 S.W.2d at 121; Steger v. Muenster Drilling
Co., 134 S.W.3d 359, 378 n.18 (Tex. App.CFort Worth 2003, pet. denied) (recognizing Adefendant‑movant must present summary judgment evidence
that establishes each element of the affirmative defense as a matter of law@) (emphasis added).








Although the majority claims
not to shift the traditional summary judgment burdens of proof, it does.  The majority upholds an affirmative defense
summary judgment even though the movant=s summary judgment evidence (even, in fact, including page 45 of
Tackett=s deposition referenced in his reply) is not sufficient to
conclusively establish every essential element of the affirmative defense.  The majority instead looks to controverting
summary judgment evidence produced by the nonmovant White to determine whether
the movant Tackett met his initial burden of proof of conclusively establishing
every element of his affirmative defense.

Because I cannot agree with
the majority=s departure
from established summary judgment law, I dissent.  I would sustain White=s first issue,[34]
reverse the trial court=s summary
judgment for Tackett, and remand the case to the trial court.

 

SUE WALKER

JUSTICE

 

DELIVERED:
August 25, 2005

 

Majority
Opinion by Chief Justice Cayce

Dissenting
Opinion by Justice Walker








 

 

 

 

          Exhibit A








 

 

 

 

 

 

Exhibit B











[1]White
also sued Greg Taylor and Wesley Wood, in their official capacities as deputy
sheriffs of Cooke County, Texas, and the trial court granted them summary
judgment as well.  White=s
appeal from the summary judgment in favor of Taylor and Wood was, however,
dismissed by agreement of the parties.





[2]Tex. R. Civ. P. 166a(c); S.W. Elec. Power
Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); Casso v. Brand, 776
S.W.2d 551, 556 (Tex. 1989); City of Houston v. Clear Creek Basin Auth.,
589 S.W.2d 671, 678 (Tex. 1979).





[3]S.W.
Elec. Power Co., 73 S.W.3d at 215; Sci. Spectrum, Inc. v.
Martinez, 941 S.W.2d 910, 911 (Tex. 1997); Great Am. Reserve Ins. Co. v.
San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).





[4]Great
Am., 391 S.W.2d at 47.





[5]Harwell
v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex.
1995).





[6]Great
Am., 391 S.W.2d at 47.





[7]Tex. R. Civ. P. 166a(c); Trico Techs.
Corp. v. Montiel, 949 S.W.2d 308, 310 (Tex. 1997).





[8]Rhone-Poulenc,
Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999); City of
Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex. 1994).





[9]Ryland
Group, Inc. v. Hood, 924 S.W.2d 120, 121 (Tex. 1996).





[10]Chambers, 883
S.W.2d at 653.





[11]Wadewitz
v. Montgomery, 951 S.W.2d 464, 466-67 (Tex. 1997); Chambers,
883 S.W.2d at 656.





[12]Univ.
of Houston v. Clark, 38 S.W.3d 578, 581 (Tex. 2000); Chambers,
883 S.W.2d at 657 n.7.





[13]Chambers, 883
S.W.2d at 656-57 (emphasis supplied); accord Clark, 38 S.W.3d at 581.





[14]Clark, 38
S.W.3d at 581; Hayes v. Patrick, 71 S.W.3d 516, 521 (Tex. App.CFort
Worth 2002, no pet.).





[15]Wadewitz, 951
S.W.2d at 467.





[16]See
Clark, 38 S.W.3d at 583; Wadewitz, 951 S.W.2d at 467.





[17]Clark, 38
S.W.3d at 582-83, 586.





[18]Id. at
583.





[19]Chambers, 883
S.W.2d at 657.





[20]The
trial court sustained White=s objections to various
portions of Tackett=s
affidavit filed in support of his summary judgment motion.  We do not consider the excluded affidavit
testimony in our analysis of whether Tackett met his burden of proving that he
acted in good faith.





[21]Because
the dissent has attached one page of the deposition excerpt to the dissenting
opinion, we have included all nine pages of the excerpt as an addendum to this
opinion in the interest of completeness.





[22]White
contends that at the time of the collision Limones was traveling at speeds of
up to 60 or 65 miles per hour in a residential neighborhood.





[23]See
Clark, 38 S.W.3d at 587-88; Wadewitz, 951 S.W.2d at 466-67; Chambers,
883 S.W.2d at 656.





[24]Chambers, 883
S.W.2d at 657.





[25]Several
of the policies that White proffered from other local governments likewise had
effective or revision dates after the date of the New Year=s Eve
2001 accident.





[26]See
S.W. Elec. Power Co., 73 S.W.3d at 215.





[27]See
Browning-Ferris, Inc. v. Reyna, 865 S.W.2d 925, 928 (Tex.
1993); Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983) (both
holding that circumstantial evidence may be used to establish any material
fact, but it must transcend mere suspicion or surmise).





[28]See
Chambers, 883 S.W.2d at 657.





[29]See Tex. R. Civ. P. 166a(c) (providing for
trial court to rule on summary judgment motion based on, among other evidence,
deposition transcripts referenced or set forth in motion or response); Wilson
v. Burford, 904 S.W.2d 628, 629 (Tex. 1995) (holding that deposition
transcript referred to in plaintiffs= response to defendants=
motion for summary judgment was, Aby the plain language of Rule
166a(c), proper summary judgment evidence on which both the movant and the
respondent could rely@).





[30]In
light of our holding on White=s issues, we need not
consider Tackett=s
issue on cross-appeal regarding the trial court=s
rulings on his summary judgment evidence. 
See Tex. R. App. P.
47.1 (providing that appellate court need address only those issues necessary
to final disposition of appeal).





[31]See
also Exhibit A attached hereto, a copy of Tackett=s
affidavit with the portions ordered stricken omitted.





[32]Page
45 of Tacket=s
deposition, mistakenly referred to in his reply as page 42, is attached hereto
as Exhibit B.





[33]First,
the movant bears the burden of coming forward with summary judgment evidence
proving each essential element of his cause of action or affirmative
defense.  See, e.g., Ryland
Group, Inc., 924 S.W.2d at 121.  If
the movant=s
motion and summary judgment proof facially establish the movant's right to
judgment as a matter of law, then the second step is triggered and the burden
shifts to the nonmovant to come forward with summary judgment evidence raising
a fact issue.  City of Houston,
589 S.W.2d at 678.





[34]In
her second issue, which I would not reach, White challenges the second summary
judgment prong; she claims that if, somehow, Tackett conclusively established
every element of his affirmative defense of official immunity, then she met her
summary judgment burden of coming forward with controverting summary judgment
evidence demonstrating the existence of material fact issues concerning Tackett=s
official immunity defense.  See Tex. R. App. P. 47.1 (court of appeals
must address only issues necessary to disposition of appeal).