Bill **SOUDER**, Immediate Past Mayor of the City of Hurst, Texas, Richard Ward, Mayor of the City of Hurst, Texas, Charles Swearengen, Mayor Pro Tem of the City of Hurst, Texas, Larry Kitchens, City Council Member of the City of Hurst, Texas, Henry Wilson, City Council Member of the City of Hurst, Texas, Bill McLendon, City Council Member of the City of Hurst, Texas, Anna Holzer, City Council Member of the City of Hurst, Texas, Allan Weegar, City Manager of the City Of Hurst, Texas, Allan Heindel, Deputy City Manager of the City of Hurst, Texas, and Eric Johnson, Project and Facilities Manager for the City of Hurst, Texas, Appellants,

v.

Charlie **CANNON**, pro se, d/b/a Charlie Cannon Contracting and Ted Doolan, Appellees.

No. 2–06–378–CV.

Court of Appeals of Texas, Fort Worth.

Sept. 6, 2007.

Rehearing Overruled Oct. 4, 2007.

Harrison & Steck, P.C., Henry E. Steck and Stephen D. Harrison, Fort Worth, for Appellants.

Lin Morrisett, Fort Worth, for Appellees.

PANEL B: LIVINGSTON, WALKER, and McCOY, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

### I. Introduction

Appellants Allan Weegar, Richard Ward, Allan Heindel, Eric Johnson, Charles Swearengen, Larry Kitchens, Henry Wilson, Bill McLendon, Anna Holzer, and Bill Souder, all of whom are city officials[1] in Hurst, Texas, filed this interlocutory appeal from the trial court's denial of their motion for summary judgment based on the affirmative defense of official immunity. In three issues, appellants argue that the trial court erred by denying their motion for traditional summary judg-

---

1. Appellants' names and titles are as follows:
   1) Allan Heindel—Deputy City Manager of Hurst
   2) Allan Weegar—City Manager of Hurst
   3) Eric Johnson—Project Manager for Hurst
   4) Bill Souder—Mayor of Hurst when the facts of this case occurred
   5) Richard Ward—Hurst City Council member when the facts of this case occurred; current Mayor of Hurst
   6) Charles Swearengen—Hurst City Council member when the facts of this case occurred; current Mayor Pro Tem
   7) Larry Kitchens—Hurst City Council member
   8) Henry Wilson—Hurst City Council member
   9) Bill McLendon—Hurst City Council member
   10) Anna Holzer—Hurst City Council member

ment and by overruling several of their objections to the summary judgment evidence of appellees Charlie Cannon[2] and Ted Doolan. We reverse and render in part and affirm and remand in part.

## II. Background Facts and Procedural History

In December 2001 and April 2002, respectively, the City of Hurst ("City") contracted with Owen Commercial Construction, Inc. ("Owen CC") to perform construction work on two projects, the Hurst Athletic Center ("HAC") and the Hurst Main Fire Station addition ("Fire Station"). Owen CC, as principal, and Commercial Indemnity Insurance Company, as surety, executed a payment bond for the projects.[3]

The City did not enter into a contract with either appellee. Appellee Ted Doolan is a subcontractor who contracted with Owen CC in December 2001 and in May 2002 to complete electrical work on the HAC and at the Fire Station, respectively. Appellee Charlie Cannon is a subcontractor who contracted with Owen CC in July 2002 to complete masonry work on the HAC. Owen CC failed to pay appellees for the work they did in relation to the Hurst projects. According to appellees, they and the other subcontractors told Johnson, the project manager for the City, that Owen CC was not paying its subcontractors, and in response, Johnson directed them to contact the bonding company regarding any and all payment issues. Further, Jeff Young, Owen CC's project manager for the Hurst projects, testified in his affidavit that he told appellants Johnson, Weegar, and Heindel that Owen CC was not paying its subcontractors, but the City continued to pay Owen CC for six months.

Owen CC ultimately failed to complete the construction of the projects, and in April 2003, the City terminated its contracts with Owen CC. City officials held a meeting with Owen CC's subcontractors in which they informed the subcontractors of the contract termination and told them "not to set foot" on any of the job sites. As a result, the subcontractors could not access their supplies, which were located on the job sites in locked storage containers. Appellees assert that the City used these supplies to finish the projects without compensating the original subcontractors.

After the City terminated its contract with Owen CC, Owen CC went out of business, and Commercial Indemnity Insurance Company, the surety executing the bond payment, went into receivership.[4] After terminating the Owen CC contracts, the City retained another general contractor to complete the construction of the projects.[5] Appellee Cannon filed suit

---

**2.** Appellee Cannon passed away after filing this appeal. In accordance with appellate rule 7.1(a), we have proceeded to adjudicate this appeal "as if all parties were alive." TEX. R.APP. P. 7.1(a).

**3.** A governmental entity that enters into a public works contract with a general contractor must under certain circumstances require the contractor to execute performance and payment bonds before work begins. TEX. GOV'T CODE ANN. § 2253.021(a) (Vernon Supp. 2006). The purpose of the payment bond is to protect claimants who provide labor or materials in the construction of public works

because public property is protected from forced sale and therefore may not be made the subject of a mechanic's lien. *Redland Ins. Co. v. Sw. Stainless, L.P.*, 181 S.W.3d 509, 511 (Tex.App.-Fort Worth 2005, no pet.).

**4.** The record does not show the date that Owen CC went out of business; it states only that Owen CC went out of business after the City terminated the contracts.

**5.** The record does not show the date that the City hired a new general contractor after terminating its contract with Owen CC.

against both Owen CC and the City in December 2003, alleging fraud, negligence, and breach of fiduciary duty; Cannon later added appellants to the suit. The City filed a plea to the jurisdiction, which the trial court granted, ultimately disposing of Cannon's claims against the City itself.

On January 10, 2006, appellants filed a motion for summary judgment claiming that they were protected from Cannon's claims by official immunity. Doolan joined the suit shortly thereafter as a plaintiff. Then, after receiving a barrage of motions and responses, and after holding a hearing on appellants' motion for summary judgment, the trial court denied appellants' motion, concluding that appellees presented more than a scintilla of evidence that raised a fact issue as to the existence of good faith. Appellants filed this interlocutory appeal, claiming that appellees' causes of action against them are barred by official immunity and that the trial court therefore erred by denying their motion for summary judgment.[6]

### III.   Standard of Review

A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason,* 143 S.W.3d 794, 798 (Tex.2004); *see* Tex.R. Civ. P. 166a(b), (c). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *IHS Cedars Treatment Ctr.,* 143 S.W.3d at 798.

A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999); *see* Tex.R. Civ. P. 166a(b), (c). To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law. *Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 121 (Tex.1996). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *IHS Cedars Treatment Ctr.,* 143 S.W.3d at 798. We discuss these standards in the context of official immunity later in our opinion.

### IV.   Admission of Summary Judgment Evidence

In their third issue, appellants argue that the trial court erred by overruling several of their objections to appellees' summary judgment evidence. Because the trial court's admission of appellees' evidence affected its decision to deny appellants' summary judgment motion, we address the third issue first.

At the June 9, 2006 hearing on appellants' motion for summary judgment, appellees offered numerous affidavits and documents in support of their argument that summary judgment based on official immunity was not proper. In response, appellants submitted twenty-four written objections; the trial court sustained thirteen and overruled eleven objections. Appellants argue that the trial court erred by overruling their remaining eleven objections to appellees' evidence.

---

6. Appellees brought suit against appellants alleging (1) negligence per se against Weegar, Johnson, and Heindel, (2) negligence against Weegar, Johnson, Heindel, Ward, Swearengen, Kitchens, Wilson, McLendon, Holzer, and Souder, and (3) breach of fiduciary duty against Weegar.

## A. Objection to Exhibit B–6

█ Appellees offered, and the trial court admitted, Exhibit B–6, a four-page exhibit composed of copies of original petitions that Cannon obtained from the Tarrant County District Clerk's office. Exhibit B–6 contains two pages of an original petition filed by Arlington Brick & Supply, Inc. against Owen CC on December 12, 2002; the petition alleges that Owen CC breached its fiduciary duty by failing to pay Arlington Brick & Supply, Inc. for "projects." The exhibit also contains two pages of a petition filed by North Texas Concrete Structures, Inc. against Owen CC and the City on August 1, 2005; the petition alleges that the City failed to obtain and maintain a payment bond for the protection of subcontractors and that Owen CC failed to pay its subcontractors.

Appellants objected to the admission of this exhibit, arguing that the two petition excerpts were hearsay documents and may not even have been related to the HAC and Fire Station projects. Appellees did not respond to the hearsay portion of appellants' objection, but the trial court overruled the objection and considered this evidence in evaluating the motion for summary judgment.

At least two appellate courts have held that pleadings from other lawsuits are proper summary judgment evidence. *See Murillo v. Valley Coca–Cola Bottling Co.,* 895 S.W.2d 758, 761 (Tex.App.-Corpus Christi 1995, no writ); *Kazmir v. Suburban Homes Realty,* 824 S.W.2d 239, 244 (Tex.App.-Texarkana 1992, writ denied); *see also Gardner v. Martin,* 162 Tex. 156, 345 S.W.2d 274, 276–77 (1961) (court records from other cases are acceptable summary judgment evidence). *Kazmir* involved a defendant who had participated in previous lawsuits. 824 S.W.2d at 244. In a separate suit brought by a new party, the plaintiff sought to introduce the pleadings from the defendant's previous litigation as summary judgment evidence. *Id.* The *Kazmir* court stated that "court records from other cases are acceptable summary judgment evidence," and the court considered the pleadings as proper evidence. *Id.*

█ For court records to be admissible as evidence in support of a motion for summary judgment, however, copies of the records must be *certified* and attached to the motion. *See Gardner,* 345 S.W.2d at 276–77; *see also Spencer v. City of Dallas,* 819 S.W.2d 612, 615–18 (Tex.App.-Dallas 1991, no writ) (requiring nonmovant to meet same evidentiary principles as movant when submitting response to summary judgment). Here, neither of the petitions from the other lawsuits that appellees attached to their summary judgment response appear to be certified. Therefore, the trial court should not have considered them as summary judgment evidence. *See Gardner,* 345 S.W.2d at 276–77. In any event, both portions of the submitted petitions alleged that Owen CC owed money to subcontractors, but neither petition alleged what project the subcontractors had worked on for Owen CC. Therefore, even if we were to consider the petition excerpts in our review, the information included in them would not be relevant to the disposition of this case. *See* Tex.R. Evid. 401, 402.

## B. Objections to Excerpts from Cannon's Affidavit

█ Five of appellants' remaining objections involve statements admitted from Cannon's affidavit. The statements are as follows:

> In 25 years of contracting I have never met a more ruthless and dishonest group of people than those working for Owen Commercial Construction or been

involved with a fiasco of the magnitude of the Hurst jobs.

....

I have never had money issues before like I had on this job. However, on a couple of occasions I have had rough treatment. I have found that going to the owner is an effective remedy for these problems. They have the power over general contractors to make them pay the subcontractors. They usually want to help because a sub-contractor can file a lien. For this reason it is in the best interest of owners to take steps to insure that the general contractor pays the subcontractor.

....

Hurst did not take the normal steps you would expect to protect the subs....

....

Hurst officials could have fixed this problem with a few simple precautionary steps, like issuing joint checks, but they did nothing until the problem was completely out of hand and then it was too late....

....

I hold the Hurst officials as much to blame as Owen officials. They are as responsible for causing my damages as Owen CC. Hurst officials were in the position to control Owen CC. The money issues were brought to their attention and they did nothing. I believe that their position in this matter has been cold-hearted and irresponsible.

Appellants objected to these statements arguing that they were "unsupported conclusory statements" and, thus, not proper summary judgment evidence.

Affidavits in support of motions for summary judgment must be developed from someone with personal knowledge, set forth such facts that would be admissi-

ble in evidence, and establish that the affiant is competent to testify on the matters stated therein. TEX.R. CIV. P. 166a(f); *Ryland Group*, 924 S.W.2d at 122. The objection that a statement is "conclusory" is an objection that is frequently made to challenge affidavits in summary judgment cases. *See Ryland Group*, 924 S.W.2d at 122; *Johnson v. Bethesda Lutheran Homes & Servs.*, 935 S.W.2d 235, 239 (Tex. App.-Houston [1st Dist.] 1996, writ denied). Affidavits consisting only of conclusions are insufficient to raise an issue of fact in response to a motion for summary judgment. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex.1984) (holding that a statement in an affidavit that "his contractual obligation had been modified" was nothing more than a legal conclusion and the affidavit should have gone further to specify factual matters such as the "time, place, and exact nature of the alleged modification"); *Residential Dynamics, LLC v. Loveless*, 186 S.W.3d 192, 198 (Tex.App.-Fort Worth 2006, no pet.). A conclusory statement is one that does not provide the underlying facts to support the conclusion. *Loveless*, 186 S.W.3d at 198.

Despite appellants' contentions, Cannon's affidavit does not consist of unsupported conclusions. The affidavit *does* consist of Cannon's opinions about the actions of Owen CC and appellants regarding the construction projects at issue. All of the statements in Cannon's affidavit that the trial court considered in response to the motion for summary judgment were based on Cannon's personal knowledge of the construction industry, an industry in which he had completed over 1000 construction jobs in twenty-five years. Based on his experience in the construction industry and personal knowledge about the nature of the construction jobs at issue, the opinions in Cannon's affidavit could have been admitted at trial during his

testimony. *See* TEX.R. EVID. 701 (providing that lay witness may testify to opinions or inferences rationally based on that witness's perception and helpful to a clear understanding of the witness's testimony or the determination of a fact issue); *Krishnan v. Law Offices of Preston Henrichson, P.C.,* 83 S.W.3d 295, 300 (Tex. App.-Corpus Christi 2002, pet. denied) (evaluating attorney's personal knowledge and experience in the legal field when determining whether or not to consider attorney's affidavit testimony as summary judgment evidence); *Larson v. Family Violence & Sexual Assault Prevention Ctr. of S. Tex.,* 64 S.W.3d 506, 512 (Tex.App.-Corpus Christi 2001, pet. denied) (evaluating experience and personal knowledge of sexual assault center director when determining whether to consider director's testimony about center's financial problems as summary judgment evidence). Because Cannon's affidavit was supported by facts and personal knowledge, the trial court properly considered this evidence. *Loveless,* 186 S.W.3d at 198.

### C. Objections to Excerpts from Doolan's Affidavit

Four of appellants' remaining objections involve statements admitted from Doolan's affidavit. The statements are as follows:

I made Eric Johnson, the project manager for Hurst aware, on numerous occasions of the mismanagement and complete incompetence of Owen CC as a General Contractor.

. . . .

It has been stated to me by Jeff Young, project manager for Owen that Trine Owen took over $900,000.00 out of Owen in the year 2002.

. . . .

These payments were made even though no subcontractors were performing any work on HAC and [the Fire Station] due to the lack of payments. The projects were basically shut down in December because of the lack of payment of monies owed that were way past due. None of this money was distributed to the subcontractors. Hurst was well aware of the serious financial issues of the subcontractors that needed to be addressed and they continued to make these payments.

. . . .

Even though the City of Hurst was fully aware of the false payment affidavits and that payments to the subcontractors were not being properly made to Owen's subcontractors they continued to pay Owen CC. Hurst clearly was irresponsible in the control that they had over the payments to Owen CC and was not responsive to the needs and issues of the subcontractors in the administration of said contracts. It was quite apparent that Hurst knew the payment affidavits were false and misrepresented.

Appellants objected to the second statement—the statement that Young allegedly made to Doolan—on the basis of hearsay. *See* TEX.R. EVID. 801(d). Appellants objected to the other statements arguing that they were "unsupported conclusory statements" and, thus, not proper summary judgment evidence.

■ Appellants' hearsay objection should have been sustained. Appellees do not identify any evidence in the record showing that Young's alleged statement falls within a hearsay exception. Therefore, we will not consider this statement in our review. *See* TEX.R. CIV. P. 166a(f); *Einhorn v. LaChance,* 823 S.W.2d 405, 410 (Tex.App.-Houston [1st Dist.] 1992, writ dism'd w.o.j.) (op. on reh'g) (holding that statements in affidavits based solely on hearsay are inadmissible as summary judgment evidence); *Lopez v. Hink,* 757

S.W.2d 449, 451 (Tex.App.-Houston [14th Dist.] 1988, no writ) (same).

■ Further, the statements within Doolan's affidavit referring to "Hurst" and the "City of Hurst" knowing about the false payment affidavits and being aware of the financial difficulties of the subcontractors were unsupported by the record. Appellees do not identify any evidence in the record supporting these conclusory statements. Although Young's affidavit alleges that Weegar, Heindel, and Johnson all had knowledge of Owen CC's lack of payment to the subcontractors, Young's affidavit does not support the conclusion that all of the city officials were aware of the lack of payment. Further, no other evidence supports the conclusion that individuals other than Weegar, Heindel, and Johnson had knowledge of Owen CC's financial dealings with the subcontractors. Therefore, we will not consider these statements in our review. *See Brownlee*, 665 S.W.2d at 112. The remaining portions of Doolan's affidavit were either supported by facts and personal knowledge or were supported by facts in other affidavits. Thus, the trial court properly considered this evidence. *Loveless*, 186 S.W.3d at 198.

### D. Objection to an Excerpt from Robin Mosier's Affidavit

■ Robin Mosier was a subcontractor hired by Owen CC to perform heating and air conditioning work on the Fire Station. Appellants' final objection involved statements from Mosier's affidavit. The statements are as follows:

*The Project Manager on behalf of the City of Hurst, stole over $50,000.00 worth of equipment and his response was "tough." His action put our financial status with our suppliers in jeopardy and has cost us great financial hardship. The Project Manager operated out of the line of conduct of his position, knowing that the Bonding Company was insolvent, and purposely stole the materials from us and other subcontractors, in an effort to complete the job, by personally guarantying payment for several months by getting contractors to deliver to the job site while knowingly defrauding contractors out of their materials, tools and labor.* We were coerced into delivering materials on the job site, thru promise of funding by the City Project Manager, threat of lawsuit by Jeff Young and Ken Pope for failing to work, although there was no payment made. The job was poorly managed with much of the work requiring to be redone due to poor construction management skills on the part of the contractor and the City of Hurst. [Emphasis added.]

Appellants objected to the emphasized statements as conclusory, and the trial court failed to identify whether it granted or overruled the objection. We conclude that the trial court should not have considered the emphasized statements as summary judgment evidence. These statements are conclusory and unsupported by other evidence, and we will not consider them in our review. *See Brownlee*, 665 S.W.2d at 112. The remaining, nonemphasized statements in Mosier's affidavit were either supported by facts and personal knowledge or were supported by facts in other affidavits. Thus, we will consider the nonemphasized statements in the affidavit in our review. *Loveless*, 186 S.W.3d at 198.

Having determined that the trial court properly considered some portions of appellees' summary judgment evidence and erred by considering other portions, we overrule appellants' third issue in part and sustain it in part.

## V. Summary Judgment Based on Official Immunity

In their first and second issues, appellants argue that the trial court erred by denying their motion for summary judgment on the grounds of official immunity.

### A. Applicable Law

Texas courts have long recognized common-law official immunity for a variety of public officials. *Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 423 (Tex.2004). Common-law official immunity is based on the necessity for public officials to act in the public interest with confidence and without the hesitation that could arise from having their judgment continually questioned by extended litigation. *Id.* at 424; *see Kassen v. Hatley*, 887 S.W.2d 4, 8 (Tex.1994); *Baker v. Story*, 621 S.W.2d 639, 643–44 (Tex.Civ.App.-San Antonio 1981, writ ref'd n.r.e.). The purpose of common-law official immunity is to protect public officials from being forced to defend their decisions that were reasonable when made, but upon which hindsight has cast a negative light. *Telthorster v. Tennell*, 92 S.W.3d 457, 463 (Tex.2002).

Common-law official immunity is an affirmative defense. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994); *Perry v. Tex. A & I Univ.*, 737 S.W.2d 106, 110 (Tex.App.-Corpus Christi 1987, writ ref'd n.r.e.). This defense protects government employees from suit arising from performance of their (1) discretionary duties (2) performed in good faith and (3) within the scope of their authority. *Ballantyne*, 144 S.W.3d at 422; *Chambers*, 883 S.W.2d at 653; *Freeman v. Wirecut E.D.M., Inc.*, 159 S.W.3d 721, 729 (Tex.App.-Dallas 2005, no pet.). The burden is on the defendant to establish all elements of the defense. *Chambers*, 883 S.W.2d at 653; *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984).

### 1. Discretionary Duties

An action is considered discretionary if it involves personal deliberation, decision, and judgment. *Chambers*, 883 S.W.2d at 654; *Ramos v. Tex. Dep't of Pub. Safety*, 35 S.W.3d 723, 727 (Tex.App.-Houston [1st Dist.] 2000, pet. denied). In determining if an act is discretionary, the issue is whether an employee was performing a discretionary function, not whether he had the discretion to do an allegedly wrongful act while discharging that function or whether the employee's job description included discretionary duties. *Chambers*, 883 S.W.2d at 653; *Ramos*, 35 S.W.3d at 727. "Discretionary acts are those related to determining what the policy of the governmental unit will be, but do not extend to the carrying out of the specifics of particular policies or exercise of 'professional' or 'occupational' discretion." *Garza v. Salvatierra*, 846 S.W.2d 17, 22 (Tex.App.-San Antonio 1992, writ dism'd w.o.j.).

### 2. Good Faith

To determine whether a public official acted in good faith, we apply an objective standard and must determine whether a reasonably prudent official, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred. *Chambers*, 883 S.W.2d at 656; *see also Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 164 (Tex.2004); *Ballantyne*, 144 S.W.3d at 426; *Telthorster*, 92 S.W.3d at 465; *Freeman*, 159 S.W.3d at 729. The standard of good faith as an element of common-law official immunity is not a test of carelessness or negligence, or a measure of an official's motivation. *Joe*, 145 S.W.3d at 164; *Ballantyne*, 144 S.W.3d at 426. Additionally, "[t]his test of good faith does

not inquire into 'what a reasonable person would have done,' but into 'what a reasonable [person] could have believed.'" *Ballantyne*, 144 S.W.3d at 426; *Telthorster*, 92 S.W.3d at 465. It does not require the official to show that all reasonably prudent officials would have made the same decision; rather, the official must show only that a reasonable person, possessing the same information he had at the time, could have believed his conduct was lawful. *Chambers*, 883 S.W.2d at 656; *Bowles v. Yeganeh*, 84 S.W.3d 252, 254 (Tex.App.-Dallas 2002, no pet.); *Smith v. Davis*, 999 S.W.2d 409, 415 (Tex.App.-Dallas 1999, no pet.).

"Once the defendant presents proof that a reasonable [person] in the same or similar circumstances would have taken the same action, the burden shifts to the plaintiff to show that *no* reasonable [person] in the defendant's position could have thought the facts were such they justified the defendant's act." *Bowles*, 84 S.W.3d at 254–55; *Smith*, 999 S.W.2d at 415. "[P]robative evidence on the issue of good faith is limited to objective evidence." *Ballantyne*, 144 S.W.3d at 427; *see Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex.1997); *Freeman*, 159 S.W.3d at 730. In *Wadewitz*, the Texas Supreme Court concluded that "a court must measure good faith in official immunity cases against a standard of objective legal reasonableness." 951 S.W.2d at 466.

### 3. Scope of Authority

Finally, in addition to the foregoing, a government official must demonstrate that he was acting within the scope of his authority to be entitled to common-law official immunity. Public officials act within the scope of their authority if they are discharging the duties generally assigned to them. *Ballantyne*, 144 S.W.3d at 424; *Chambers*, 883 S.W.2d at 658.

"The fact that a specific act that forms the basis of the suit may have been wrongly or negligently performed does not take it outside of the scope of authority." *Wethington v. Mann*, 172 S.W.3d 146, 152 (Tex. App.-Beaumont 2005, no pet.) (quoting *Koerselman v. Rhynard*, 875 S.W.2d 347, 350 (Tex.App.-Corpus Christi 1994, no writ)).

### B. Analysis

#### 1. The Mayor and City Council Members

Appellees claim in their petition that the mayor and city council members "had duties as principles to see that the management of Hurst's affairs under the direction of Weegar went smoothly." Further, appellees allege that the "nonfeasance" of the City officials in allowing the negligent distribution of payments to Owen CC was a proximate cause of appellees' damages. Finally, without citing any legal authority, appellees argue on appeal that the affirmative defense of official immunity is not available to the elected officials because "they are being charged with 'nonfeasance' for failure to adequately investigate" the subcontractors' complaints.

First, torts may be based upon nonfeasance, or the omission to act. *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508, 510–11 (1947); *Leon's Shoe Stores v. Hornsby*, 306 S.W.2d 402, 409 (Tex.Civ.App.-Waco 1957, no writ). However, appellees failed to provide evidence that the city council members and mayor owed them a duty to ensure Owen CC paid them, or to ensure that payments to Owen CC were discontinued. In fact, the Hurst City Code—which appellees provided to the trial court as summary judgment evidence—does not list this duty under the powers or responsibilities of city council members.

Further, there is nothing in the record indicating that the city council members or mayor *knew* that the subcontractors were not getting paid. On the contrary, the summary judgment evidence establishes that the only actions taken by the mayor and city council members with regard to the City's contracts with Owen CC were to consider and vote on approval and termination of the contracts at city council meetings. Appellees do not dispute that the city council members and mayor were discharging their duties as city officials, acting within their discretion, and acting in good faith when voting to approve, and later terminate, the Owen CC contracts. Even if the city council members and mayor were negligent by *failing to notice* the alleged fraudulent payments to Owen CC, negligence alone is not sufficient to show a lack of good faith. *See Joe,* 145 S.W.3d at 164; *Ballantyne,* 144 S.W.3d at 426. Accordingly, the trial court erred by denying summary judgment in favor of the city council members and the mayor on their affirmative defense of official immunity. We sustain appellants' first and second issues as to the mayor and city council members.

## 2. Weegar, Heindel, and Johnson

Appellees allege a right to recover tort damages against Weegar, Heindel, and Johnson because they approved Owen CC's pay applications even though Owen CC was not paying the subcontractors. Appellees do not dispute that Weegar, Heindel, and Johnson were acting within the scope of their employment by approving Owen CC's pay applications. Therefore, we will focus on the other two elements of official immunity.

Citing *Kassen,* appellees argue that the defense of official immunity is not available to Weegar, Heindel, or Johnson because the discretion they exercised in administering the City's construction contracts with Owen CC was "occupational" discretion that is practiced in the private sector, and not simply "governmental" discretion. 887 S.W.2d at 9. However, appellees' reliance on *Kassen* is misplaced. In *Kassen,* the Texas Supreme Court addressed the issue of whether Texas distinguishes medical from governmental discretion in applying the doctrine of official immunity to government-employed medical personnel, and it determined that once a government health-care provider begins to treat a patient, the duty of care owed to the patient is no different from the duty of care owed by any other medical professional. *Id.* at 9–10. The *Kassen* court based its conclusion on the distinctive link between the health care provider and patient, and it rejected the conclusion that official immunity is available only for activities that are uniquely governmental. *Id.* In rejecting this "uniquely governmental" test, the court observed that "[t]here are few activities that are uniquely governmental" and that the official immunity would be "a near nullity if its protection only extends to government employees exercising 'uniquely governmental' functions." *Id.* at 10; *see also Mitchell v. City of Dallas,* 855 S.W.2d 741, 745 (Tex.App.-Dallas 1993), *aff'd,* 870 S.W.2d 21 (Tex.1994) (noting that the construction of a city park is a governmental function).

■ The summary judgment evidence established that Weegar, Heindel, and Johnson all used discretion in approving Owen CC's pay applications. Weegar testified in his affidavit that there were no specific City rules, regulations, or procedures that governed the approval or disapproval of the pay applications, but rather that the decision was within his personal discretion as City manager. Weegar, Heindel, and Johnson all testified that they made personal judgments regarding

whether to pay an application based on input from the City's staff, recommendations from the City's architects, and their own independent knowledge of Owen CC's progress. *See Chambers,* 883 S.W.2d at 654; *Ramos,* 35 S.W.3d at 727. No summary judgment evidence controverted this testimony. Thus, the evidence shows that Weegar, Heindel, and Johnson used discretion in deciding whether to make payments to Owen CC.

■■■ We now turn to the good faith element of appellants' official immunity defense, which the trial judge indicated was of the most concern to him.[7] As summary judgment evidence, appellants offered affidavits from Weegar, Heindel, and Johnson. Weegar and Heindel both averred as follows:

> [Owen CC], as Principal, and Commercial Indemnity Insurance Company, as Surety, provided payment and performance bonds required by the TEXAS GOVERNMENT CODE for the two projects.
>
> . . . .
>
> . . . . Unless I had knowledge of some construction defect or other breach of the Construction Contracts of which the architects who had certified payment did not have knowledge, I would sign the check for payment to [Owen CC] in accordance with the certification of the architects and the requirements of the terms of the contracts. . . .

... I would consider[8] approval or disapproval of payments to [Owen CC] only when the payment applications were first certified for payment by the architect on the construction projects, and only after the ... City Staff who were working on the Project had reviewed the applications and recommended payment.

. . . .

... I was not aware of [Owen CC's] payment records or whether payments were being properly made or improperly not made to subcontractors. I always acted in good faith when it was necessary for me to take action in matters related to payment made [by Owen CC]. . . .

Johnson's affidavit contained sworn statements similar to the first three paragraphs quoted above, but in contrast to Weegar's and Heindel's averments that they were not aware of Owen CC's payment records, Johnson averred, "I was not aware of any attempt by [Owen CC] to commit the fraudulent acts alleged by [appellees]. . . . I always acted in good faith when it was necessary for me to take action in matters related to [Owen CC]." Appellants concede "that Johnson had knowledge of [the] subcontractors' claims that they were not being paid by Owen [CC]."

Appellants also offered the construction contract documents as summary judgment evidence. The contract documents required the City to make payments to Owen CC as certified by the architect;[9] they

---

**7.** The trial court stated on the record, "We're dealing with ... who knew what about the payment of the subs and whether or not they're going to get paid. And, quite frankly, that's the area of concern for me."

**8.** Heindel's affidavit differs slightly from Weegar's in this paragraph. Instead, Heindel's affidavit reads, "I would recommend approval or disapproval of [Owen CC's] payment applications only when the payment applica-

tions were first certified for payment by the architect on the construction projects, after I personally reviewed the payment applications, and only after the city staff who were working on the Project informed me whether they recommended payment or not."

**9.** Under the construction documents, the architect's certification of Owen CC's right to payment was a representation "based on the [a]rchitect's evaluation of the Work and the

also provided that late payments would accrue interest and that Owen CC could stop work if the City failed to pay Owen CC after the architect certified Owen CC's right to payment. Under article 9.6.4 of Owen CC's contract with the City, the City did not "have an obligation to pay or to see to the payment of money to a Subcontractor except as may otherwise be required by law." [10] But the contract documents also provided that the City could terminate the agreement with Owen CC if Owen CC failed to pay subcontractors "for materials or labor in accordance with the respective agreements" between Owen CC and the subcontractors. To request payment from the City in accordance with the contract documents, Owen CC had to first certify that it had paid for all work completed on the particular project.

Cannon and Doolan both averred in their affidavits offered as summary judgment evidence that they told Johnson that Owen CC was not paying the subcontractors for work they had done. Doolan also averred that the City made payments to Owen CC as late as January 2003 [11] even though by then he was the only subcontractor working at one of the sites because the rest had quit for lack of payment.[12] Cannon testified that in his twenty-five years of experience in contracting, he had never experienced "money issues" like he did with the Owen CC contract. Further,

in prior jobs, Cannon found that property owners have "the power over general contractors to make them pay the subcontractors" and that the City "did not take the normal steps you would expect to protect the subs" such as "issuing joint checks." Doolan testified that the City "clearly was irresponsible in the control they had over the payments to Owen CC and was not responsive to the needs and issues of the subcontractors in the administration of said contracts." Appellees both testified that they told Johnson that the City should stop paying Owen CC because Owen CC was not paying its subcontractors, and in response, Johnson told them to contact the payment bond surety.

In addition to their own affidavits, appellees offered the affidavit of Jeff Young, Owen CC's project manager. In his affidavit, Young averred that he "personally explained the lack of payment problem" to Weegar, Heindel, and Johnson, as well as the architectural firm overseeing the projects. He also stated that six months before the City terminated the agreement with Owen CC, he told the same people (1) that they needed to contact the bonding company and fire Owen CC, (2) that there was no way Owen CC could finish these projects financially, (3) that Mr. Owen had used the money allocated for the projects for personal gain and that, "according to Mr. Owen, he was not going to give that

---

data comprising [Owen CC's payment request] that the Work ha[d] progressed to the point indicated and that, to the best of the [a]rchitect's knowledge, information and belief, the quality of the Work [was] in accordance with" the contract documents. The certification did not require the architect to determine how or for what purpose Owen CC had applied the proceeds of prior payments.

10. Appellees note that Owen CC breached their contract with the City by failing to pay the subcontractors, and, thus, the City was under no obligation to continue to make payments to Owen CC. Although this may be

true, the contract does not prohibit the City from continuing to make payments to Owen CC after a breach either.

11. The City attached copies of payment certifications and cancelled checks to its motion for summary judgment that confirm this allegation.

12. The affidavit from Robin Mosier, an air conditioning subcontractor, stated that Azle Air Conditioning and Heating Service stopped work at the fire station after January 4, 2003.

money back,"[13] and (4) that they should not approve any additional payment applications from Owen CC.

To meet their burden of proof regarding good faith, Weegar, Heindel, and Johnson did not need to establish that *all* city and project managers would have approved Owen CC's pay applications, but only that reasonably prudent city and project managers, under the same or similar circumstances, *could have believed* it was reasonable to approve a general contractor's pay application. *See Joe,* 145 S.W.3d at 164; *Telthorster,* 92 S.W.3d at 465. If Weegar, Heindel, and Johnson were able to meet their burden of proof regarding good faith, appellees could defeat the good faith argument only by establishing that *no reasonable person* in the managers' positions could have thought the facts were such that they justified payment. *See Chambers,* 883 S.W.2d at 656–57. Evidence that a reasonably prudent project or city manager could have reached a different decision or that the managers were negligent is insufficient to defeat good faith. *See Joe,* 145 S.W.3d at 164; *Telthorster,* 92 S.W.3d at 465; *Chambers,* 883 S.W.2d at 656.

■ Here, contradictory evidence exists regarding the material facts underlying Weegar's, Heindel's, and Johnson's good faith claims. *See Adams v. Downey,* 124 S.W.3d 769, 772 (Tex.App.-Houston [1st Dist.] 2003, no pet.). Weegar and Heindel both averred that they had no knowledge that Owen CC was failing to pay its subcontractors; appellees' evidence

shows otherwise. Although Johnson concedes that he was aware of Owen CC's failure to pay its subcontractors, he claimed that he was unaware of any fraudulent activity by Owen CC. But his own summary judgment evidence showing that Owen CC had to certify on its payment applications that all subcontractors were paid from prior payments calls his testimony into question. And Young claimed in his affidavit that he told Johnson, Weegar, and Heindel not only that Owen CC was not paying the subcontractors but also that Mr. Owen never intended to pay them in the future and that the City kept paying Owen CC even after learning this fact. In official immunity cases, summary judgment is improper when there are issues concerning the underlying facts. *Adams,* 124 S.W.3d at 774; *Hayes v. Patrick,* 71 S.W.3d 516, 522 (Tex.App.-Fort Worth 2002, no pet.).

Weegar, Heindel, and Johnson contend that even if it is undisputed that they knew Owen CC was not paying the subcontractors, they nevertheless acted in good faith by continuing to pay Owen CC because Owen CC had provided a payment bond pursuant to the government code to protect the subcontractors in the event of a default by Owen CC.[14] *See* TEX. GOV'T CODE ANN. § 2253.021(a). They also contend that the subcontractors had no chance of being paid in the future if the City stopped paying Owen CC. But appellees offered evidence showing that the City continued to pay Owen CC even after all of the subcontractors *had already stopped*

---

13. Young said, "His [Mr. Owen's] explanation to me personally was, ... 'that there was (X) amount of dollars in profit in these projects when they were bid, so I am taking what is mine. It's up to you to find a way to finish the projects with what was left.'"

14. Mosier stated that the bond company was insolvent during part or all of the duration of

the Owen CC contract. However, the trial court properly sustained appellants' objection to the admission of this testimony as a conclusory statement. Appellees' only other evidence regarding the solvency of the bond company was in Exhibit B-6, which we did not consider in our review.

*working* for lack of payment and that Weegar, Heindel, and Johnson therefore knew that Owen CC's payment applications indicating that all work had been completed and that all subcontractors had been paid for that work were false and that new subcontractors would need to be hired before the projects could be completed. For these reasons, we conclude and hold that Weegar, Heindel, and Johnson did not conclusively prove that reasonably prudent city and project managers, under the same or similar circumstances, could have believed it was reasonable to approve Owen CC's pay applications. *See Adams,* 124 S.W.3d at 774–75.

Because appellants Weegar, Heindel, and Johnson failed to meet their burden of proof, the trial court did not err by denying appellants' motion for summary judgment as to them. *See Rhone–Poulenc, Inc.,* 997 S.W.2d at 223. Accordingly, we overrule appellants' first and second issues as to Weegar, Heindel, and Johnson.

## VI. Conclusion

Having sustained appellants' third issue in part, and their first and second issues as to Souder, Ward, Swearengen, Kitchens, McLendon, Holzer, and Wilson, we reverse the trial court's order denying appellants' motion for summary judgment as to those appellants and render summary judgment for those appellants on all of appellees' claims. *See* TEX.R.APP. P. 43.2(c). But having overruled appellants' first and second issues as to Weegar, Heindel, and Johnson, we affirm the trial court's order denying appellants' motion for summary judgment as to them, and we remand that portion of the cause (as to appellants Weegar, Heindel, and Johnson) to the trial court for further proceedings.