

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00316-CV

_____

SUZI G. BISHARA, Appellant

V.

TEXAS HEALTH HARRIS METHODIST HOSPITAL FORT WORTH INC.,
D/B/A TEXAS HEALTH HARRIS METHODIST, HURST-EULESS-BEDFORD,
Appellee

On Appeal from the 67th District Court
Tarrant County, Texas
Trial Court No. 067-311176-19

Before Birdwell, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Wallach

**MEMORANDUM OPINION**

This is an appeal of a final judgment granting the combined motion to dismiss and motion for summary judgment of Appellee Texas Health Harris Methodist Hospital Fort Worth Inc., doing business as Texas Health Harris Methodist, Hurst-Euless-Bedford (the Hospital). The trial court dismissed with prejudice Appellant Suzi Bishara's claims—claims for intentional infliction of emotional distress (IIED), intrusion on seclusion, and public disclosure of private facts—and awarded the Hospital court costs and attorney's fees.

Bishara presents three issues on appeal. In her first issue, she contends that the trial court erroneously dismissed her IIED claim on the basis that she failed to produce an expert report because her IIED claim is not a health care liability claim. In her second issue, Bishara argues that the trial court erroneously granted summary judgment for the Hospital because (1) a fact issue still exists and (2) expert reports are not required to prove IIED claims. In her third issue, she argues that the trial court abused its discretion by awarding attorney's fees to the Hospital because its affidavit was conclusory and therefore insufficient to support the award.

We affirm in part and reverse in part. We affirm those portions of the trial court's judgment dismissing Bishara's claims with prejudice and directing her to pay attorney's fees. However, because the evidence is insufficient to support the amount of the attorney's fees awarded, we reverse the trial court's judgment as to the amount

of the award and remand this case to the trial court solely for a redetermination of reasonable trial attorney's fees.

## I. BACKGROUND

### A. *Historical Facts*

On September 6, 2017, Bishara took her terminally ill husband, Amin Bishara, to the Hospital. Amin was experiencing weakness associated with pancreatic cancer that had metastasized to his lung. He was placed in the intensive care unit but ultimately passed away on September 15, 2017.

During Amin's stay in the hospital and before his body was removed, Bishara made several privacy requests. The requests included: (1) that Amin have privacy in his room, (2) that visitors not have access to him absent permission from the family or hospital staff, (3) that visitors not be allowed to bypass the nurses' station and access Amin's room, (4) that the medical staff keep his door closed and curtains drawn, (5) that the medical staff not provide information to visitors regarding Amin's patient status, (6) that visitors' names be documented and that the medical staff inform Bishara about visitors requesting to see her husband, and (7) that the medical staff not allow unwanted visitors to view Amin's body for an extended period of time. Bishara contends that the medical staff did not abide by these requests despite her constantly reminding them.

Bishara argues that the Hospital and its staff knew that ignoring her specific requests would cause her severe emotional distress because the Hospital was aware

3

that she was suffering emotionally as she watched Amin pass away. Bishara asserts that as a result of the Hospital's conduct, she has suffered severe emotional distress, including depression, anxiety, sleeplessness, intrusive thoughts, self-doubt, and an inability to perform normal work-related tasks. Bishara also asserts that because of her severe emotional distress, she has lost earnings and future earning capacity.

## B. *Procedural History*

Bishara sued the Hospital on September 16, 2019, asserting her IIED and privacy claims. The Hospital filed an answer denying all of Bishara's allegations.

The Hospital then filed its combined motion to dismiss and motion for summary judgment. In this document, the Hospital argued that the trial court should dismiss Bishara's suit because she failed to timely file an expert report supporting her claims against the Hospital, as is required by Chapter 74 of the Texas Medical Liability Act (TMLA) for health care liability claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351. The Hospital also argued that it was entitled to summary judgment because Bishara's allegations, taken as true, did not rise to the level of extreme and outrageous conduct required for an IIED claim and because Bishara did not have standing to bring the privacy claims. In addition to requesting dismissal, the Hospital requested an award of attorney's fees, supported by an affidavit from the Hospital's primary counsel.

In the affidavit, the Hospital's counsel asserts that he is licensed to practice law in Texas and is serving as the Hospital's counsel. He explains that he is a partner with

4

a law firm that primarily works in civil litigation and works with health care providers in medical malpractice and other civil liability cases. He adds that he has experience with representing health care providers in similar cases and is familiar with the "reasonable and customary charges for legal services rendered." He concludes that the reasonable and necessary attorney's fees for the case total $8,290.00.

The trial court dismissed all of Bishara's claims and directed her to pay $8,290.00 in attorney's fees. She filed a motion for new trial, which was overruled by operation of law, and timely appealed to this court. In her appeal, she does not challenge the trial court's dismissal of the privacy claims.

## II. MOTION TO DISMISS

In her first issue, Bishara argues that the trial court erroneously dismissed her suit for failing to file an expert report. She contends that her IIED cause of action is an intentional tort based on postmortem conduct, not a health care liability claim. Accordingly, she argues that her claim is not governed by Chapter 74 and that an expert report is not required.

The Hospital replies that six out of seven of Bishara's complaints directly relate to actions that occurred during Amin's time in the hospital as a patient and that qualify as medical services. The Hospital also contends that Bishara's allegations of privacy violations and IIED are causes of action that have been repeatedly regarded as health care liability claims.

5

## A. *Standard of Review*

When reviewing a trial court's decision to dismiss a health care liability claim, we employ an abuse-of-discretion standard. *TTHR, L.P. v. Coffman*, 338 S.W.3d 103, 106 (Tex. App.—Fort Worth 2011, no pet.). A trial court abuses its discretion if it acts without reference to any guiding rules or principles—that is, if its act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). However, when determining if a plaintiff's cause of action is a health care liability claim, we apply a de novo standard of review. *Baylor Scott & White, Hillcrest Med. Ctr. v. Weems*, 575 S.W.3d 357, 363 (Tex. 2019).

## B. *Health Care Liability Claims*

The TMLA requires a health care liability claimant to file an expert report regarding the defendant physician or health care provider within 120 days of the defendant's original answer. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a).[1] The expert report requirement's purpose is to identify and deter frivolous claims while not unduly restricting the plaintiff's rights. *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 502 (Tex. 2015). If the plaintiff fails to produce such a report within the time frame, the trial court must, upon a motion by the defendant, (1) award the defendant

---

[1]The recent statutory changes to Section 74.351 and the enactment of Section 74.353 are not effective until September 1, 2021, and then only for cases filed on or after that date. Accordingly, this case is governed by the current law. *See* Act of May 13, 2021, 87th Leg., R.S., ch. 167, S.B. 232, § 2, sec. 74.351(a), § 3, sec. 74.353, §§ 4–5 (to be codified at Tex. Civ. Prac. & Rem. Code Ann. §§ 74.351, 74.353).

attorney's fees and court costs and (2) dismiss the claims with prejudice. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b).

To determine if this provision of the TMLA applies, we must first determine if Bishara's claim is considered a health care liability claim. The TMLA defines a "health care liability claim" as

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13). Accordingly, the elements of a health care liability claim are (1) the defendant is a physician or health care provider, (2) the claim concerns treatment, lack of treatment, or a departure from standards of medical or health care, or safety, professional, or administrative services directly related to health care, and (3) the defendant's actions were the proximate cause of the plaintiff's injury. *Rio Grande Valley Vein Clinic, P.A. v. Guerrero*, 431 S.W.3d 64, 65 (Tex. 2014); *see* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13). Further, "the TMLA creates a rebuttable presumption that a patient's claims against a physician or health care provider based on facts implicating the defendant's conduct during the patient's care, treatment, or confinement are [health care liability claims]." *Loaisiga v. Cerda*, 379 S.W.3d 248, 252 (Tex. 2012).

The parties do not dispute that the Hospital is a health care provider, nor do they dispute that the Hospital's alleged actions were the proximate cause of Bishara's alleged injuries. The central issue is whether Bishara's IIED claim satisfies the second element of a health care liability claim. Specifically, does it concern treatment, a lack of treatment, or a departure from standards of medical or health care, or from safety, professional, or administrative services directly related to health care? *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13).

This inquiry focuses on the facts supporting the claim, rather than on what the plaintiff has labeled the claim, and considers the entire record and context of the suit. *Baylor Scott & White*, 575 S.W.3d at 363. A. plaintiff may not use artful pleading to avoid Chapter 74's requirements when the essence of the claim is a health care liability claim. *Id.* The plaintiff need not cite the TMLA or specifically allege a breach of any of the duties found in Section 74.001(a)(13) for a claim to be a health care liability claim. *Loaisiga*, 379 S.W.3d at 255. Instead, the claim is considered a health care liability claim if the facts underlying it could support liability for a breach of any of the duties listed in Section 74.001(a)(13). *Baylor Scott & White*, 575 S.W.3d at 363. If the alleged conduct is an inseparable aspect of medical or health care services, then the claim is a health care liability claim. *TTHR*, 338 S.W.3d at 107. Intentional torts can be health care liability claims when the underlying conduct is related to the provision of medical services. *Loaisiga*, 379 S.W.3d at 252–53. Additionally, when the essence of the allegations constitutes a health care liability claim, the entire suit is governed by

8

Chapter 74 and cannot be split into health care claims and non-health care claims. *Yamada v. Friend*, 335 S.W.3d 192, 195–96, 197 (Tex. 2010).

## C. *Analysis*[2]

Bishara argues that her claim is based on the Hospital's actions that occurred after Amin's death, specifically that the Hospital allowed unwanted visitors to view his body for an extended period of time. Bishara contends that because the complained-of conduct occurred after Amin's death, it does not relate to medical care. The Hospital responds that acts occurring postmortem may still fall within the scope of Chapter 74 and insists that they do so here.

Bishara points to *Hare v. Graham*, No. 2-07-118-CV, 2007 WL 3037708, at *3 (Tex. App.—Fort Worth Oct. 18, 2007, pet. denied) (mem. op.), and *Salazar v. Dickey*, No. 04-08-00022-CV, 2010 WL 307852, at *4 (Tex. App.—San Antonio Jan. 27, 2010, pet. denied) (mem. op.), in support of her assertion that conduct occurring postmortem does not relate to health care because a cadaver cannot be a patient for the purposes of rendering medical care. In both cases, the alleged misconduct

---

[2]In her brief to this court, Bishara does not challenge the dismissal of her privacy claims. Instead, she insists that she included the allegations of privacy violations in her petition merely to support her IIED claim and argues that they "are still available for a jury to consider on whether the [Hospital] acted with intent or even recklessness on the post[]mortem[] IIED claim." Because we uphold the dismissal of her IIED claim and suit, we do not further address her discussion of the privacy-violation allegations and the federal Health Insurance Portability and Accountability Act, Pub. L. No. 104–191, 110 Stat. 1936 (1996) (codified in scattered sections of 42 U.S.C.). *See* Tex. R. App. P. 47.1.

occurred postmortem and was not connected to any medical services performed or treatment administered when the patient was still alive. *Christus Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 537 (Tex. 2016). There is thus a key difference between the facts of *Hare* and *Salazar* and the facts of the present case.

As noted, the alleged acts of misconduct in *Hare* and *Salazar* were not connected to any premortem care or treatment of the patients. *Id.* Here, the Hospital's alleged conduct on which the IIED claim is based primarily took place while Amin was still alive. Although Bishara now insists that she included facts regarding the premortem privacy violations merely as evidence to support her IIED claim, it is clear that her claim is based on all the allegations in the petition. Considering the entire context of the claim, we hold that Bishara's IIED claim is a health care liability claim because the complained-of conduct relates to the Hospital's treatment of Amin during his time as a patient. *See Christus Health*, 505 S.W.3d at 537; *Loaisiga*, 379 S.W.3d at 252–53. Bishara may not carve out a singular claim outside the TMLA's scope when the underlying facts relate to Amin's time as a patient. *See Baylor Scott & White*, 575 S.W.3d at 363; *Loaisiga*, 379 S.W.3d at 252–53. Additionally, Bishara may not recast her claim in an effort to avoid Chapter 74's requirements. *See Baylor Scott & White*, 575 S.W.3d at 363.

Because Bishara's claim is a health care liability claim, it is governed by Chapter 74. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). Accordingly, it is subject to Section 74.351. *See id.* Bishara was therefore required to timely file an expert

report within 120 days of the Hospital's original answer. *See id.* Bishara failed to file the required expert report. Consequently, the trial court correctly dismissed the suit with prejudice. *See id.* § 74.351(b)(2). We overrule Bishara's first issue.

## III. MOTION FOR SUMMARY JUDGMENT

In her second issue, Bishara argues that the trial court erroneously granted the Hospital's motion for summary judgment because (1) a fact issue exists and (2) expert reports are not required, as her IIED claim is an intentional tort rather than a health care liability claim. Our above holdings that the IIED claim is a health care liability claim and that the trial court properly dismissed the suit under Chapter 74 are dispositive of this issue; we therefore do not reach the merits of Bishara's second issue. *See* Tex. R. App. P. 47.1.

## IV. ATTORNEY'S FEES

In her third issue, Bishara argues that the trial court erred by awarding attorney's fees because the Hospital's affidavit was highly conclusory and was insufficient to support the award. The Hospital argues that (1) Bishara failed to preserve the issue, and (2) the affidavit was sufficient to support the award. We will consider each argument in turn.

### A. *Preservation of Error*

Generally, to preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if not apparent from the context. Tex. R. App. P. 33.1(a)(1)(A);

*see also* Tex. R. Evid. 103(a)(1). This rule extends to complaints regarding error in awarding attorney's fees. *Gipson-Jelks v. Gipson*, 468 S.W.3d 600, 604 (Tex. App.—Houston [14th Dist.] 2015, no pet.). However, when there is no jury trial, complaints regarding the sufficiency of the evidence supporting attorney's fees may be raised for the first time on appeal. Tex. R. App. P. 33.1(d); *Gipson-Jelks*, 468 S.W.3d at 604.

Here, Bishara contests the sufficiency of the evidence supporting the attorney's fees by asserting that the attached affidavit is conclusory and insufficient to support the award. Accordingly, we may review whether the attorney's fees awarded were reasonable in light of the evidence presented. *See* Tex. R. App. P. 33.1(d); *Gipson-Jelks*, 468 S.W.3d at 604; *see also Dinkins v. Calhoun*, No. 02-17-00081-CV, 2018 WL 2248572, at *8 (Tex. App.—Fort Worth May 17, 2018, no pet.) (mem. op.).

### B. *Standards of Review*

We review a trial court's decision to award attorney's fees for an abuse of discretion. *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex. 1990). If attorney's fees are proper under the law, the trial court does not have discretion to deny them. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b)(1); *Garcia v. Gomez*, 319 S.W.3d 638, 640 (Tex. 2010).

We review the amount of attorney's fees awarded under a legal sufficiency standard. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 490 (Tex. 2019). We may sustain a legal sufficiency challenge—that is, a no-evidence challenge—only when (1) the record bears no evidence of a vital fact, (2) the rules of

law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017); *see also Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014) (op. on reh'g); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998) (op. on reh'g). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could, and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

### C. *Law and Analysis*

### 1. The Statute Mandates Attorney's Fees

Under the TMLA, the defendant physician or health care provider is entitled to recover "reasonable attorney's fees and costs of court incurred" when the plaintiff fails to file an expert report within the statutory deadline. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b)(1). The trial court's duty to dismiss the case and award attorney's fees is mandatory. *Garcia*, 319 S.W.3d at 640. The Hospital has conclusively established that it is entitled to an award of attorney's fees incurred while defending against Bishara's suit. However, the Hospital must also establish that the requested attorney's fees are reasonable. *See Rohrmoos*, 578 S.W.3d at 487.

13

## 2. Insufficient Evidence Supports the Reasonableness of the Award

To recover attorney's fees, the prevailing party has the burden to prove that (1) legal authority permits the recovery of attorney's fees, and (2) the requested attorney's fees are reasonable and necessary. *Rohrmoos*, 578 S.W.3d at 487. Whether an award of attorney's fees is reasonable is a question of fact; we review the reasonableness of the amount of the attorney's fees awarded for sufficiency of the evidence. *Sundance Minerals, L.P. v. Moore*, 354 S.W.3d 507, 513 (Tex. App.—Fort Worth 2011, pet. denied). A reasonable fee should not be excessive but should instead be fair. *Garcia*, 319 S.W.3d at 640. When evaluating the reasonableness of an attorney's fee, courts should consider the *Arthur Andersen* factors, including:

(1) the time and labor required, the difficulty of the legal issue, the skill required;

(2) the likelihood that accepting the employment will preclude the attorney from other employment;

(3) the fee customarily charged for similar services;

(4) the amount involved and the results;

(5) the time limitations;

(6) the nature and length of relationship with client;

(7) the experience, reputation, and ability of the lawyer; and

(8) whether the fee is fixed or contingent.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). While the factors are instructive, evidence for each factor is not required to decide

14

reasonableness. *Sundance Minerals*, 354 S.W.3d at 514. Additionally, Texas law does not require detailed billing records to support an award of attorney's fees, but the information may be instructive and is strongly encouraged. *Rohrmoos*, 578 S.W.3d at 502. A party requesting an award of attorney's fees bears the burden of documenting the hours expended on the litigation and the value of those hours so that the trial court may have access to sufficient information to make a meaningful evaluation of the requested amount. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761–62 (Tex. 2012).

To support the requested amount of attorney's fees, parties frequently rely on the testimony or affidavit of the attorney of record. *See Rohrmoos*, 578 S.W.3d at 476; *El Apple*, 370 S.W.3d at 759; *Garcia*, 319 S.W.3d at 641. In *Garcia*, the Supreme Court of Texas held that an attorney's testimony about his experience and his estimate of a reasonable and necessary fee was "some evidence of a reasonable fee." 319 S.W.3d at 642. However, as the *Rohrmoos* court later clarified, cursory testimony or a conclusory affidavit is not sufficient evidence to support the award's amount, even though it is "enough [evidence] to present the issue to the court." 578 S.W.3d at 497 (emphasis omitted) (quoting *El Apple*, 370 S.W.3d at 762). The *Rohrmoos* court explicitly stated that *Garcia* is not a guide on the standard for whether evidence is legally sufficient to support an award of attorney's fees. *Id.*

Bishara challenges the sufficiency of the evidence that the Hospital offered to support its requested attorney's fees by asserting that the statements contained in the affidavit are conclusory. Affidavits supporting requests for attorney's fees must be

developed by an individual with personal knowledge. *See Souder v. Cannon*, 235 S.W.3d 841, 849 (Tex. App.—Fort Worth 2007, no pet.). A conclusory statement is one that does not provide the underlying facts to support the conclusion and is not considered competent evidence. *Atmos Energy Corp. v. Paul*, 598 S.W.3d 431, 467 (Tex. App.—Fort Worth 2020, no pet.).

The Hospital's attorney asserts in the affidavit that $8,290.00 is a reasonable and necessary attorney's fee and bases this on his experience representing health care providers in similar suits. He provides no specific details regarding the computation of the amount requested and states only that he is familiar with customary charges for similar legal services. The affidavit contains no information regarding exactly what legal work was done for the Hospital, the time spent, the expertise required, or his normal hourly rate. While not all this information is necessarily required to sufficiently support a finding that an award of attorney's fees is reasonable, such details are strongly encouraged. *Rohrmoos*, 578 S.W.3d at 502. Additionally, without any of this information, there is little to no basis for the court to effectively evaluate whether the requested attorney's fees are reasonable considering the legal work performed. *See El Apple*, 370 S.W.3d at 763.

The Hospital asserts that a similar affidavit was held sufficient in *Roberts v. Irigoyen*, suggesting that the affidavit filed in this case should therefore also be sufficient. No. 13-99-011-CV, 2000 WL 35721238, at *4 (Tex. App.—Corpus Christi–Edinburg May 4, 2000, no pet.) (not designated for publication). Unpublished

opinions have no precedential value. Tex. R. App. P. 47.7(b). Additionally, while we respect our sister courts' decisions, we are not bound by them. *P.C. ex rel. C.C. v. E.C.*, 594 S.W.3d 459, 464 (Tex. App.—Fort Worth 2019, no pet.). Finally, the *Roberts* opinion came out well before the Supreme Court of Texas handed down *El Apple* and *Rohrmoos*, which have provided more specific guidance regarding the evaluation of requested attorney's fees. *Rohrmoos*, 578 S.W.3d at 497; *El Apple*, 370 S.W.3d at 761–62.

While the Hospital is entitled to an award of attorney's fees, in light of *El Apple* and the Supreme Court of Texas's statements in *Rohrmoos*, we agree with Bishara that the Hospital's affidavit is legally insufficient to support the amount awarded. Accordingly, we sustain Bishara's third issue.

## V. CONCLUSION

We affirm in part and reverse in part. Having overruled Bishara's first issue, which is also dispositive of her second issue, we affirm that portion of the trial court's judgment dismissing her suit. We also affirm the trial court's decision to award attorney's fees to the Hospital. However, having sustained Bishara's third issue, we reverse the trial court's judgment as to the amount of the attorney's fees awarded and remand this case to the trial court solely for a redetermination of reasonable and necessary trial attorney's fees incurred. *See Long v. Griffin*, 442 S.W.3d 253, 255–56 (Tex. 2014) (per curiam); *El Apple*, 370 S.W.3d at 764; *Fiamma Statler, LP v. Challis*, No. 02-18-00374-CV, 2020 WL 6334470, at *19 (Tex. App.—Fort Worth Oct. 29,

2020, pet. denied) (mem. op.).

/s/ Mike Wallach

Mike Wallach
Justice

Delivered: July 22, 2021